(No. 18587

THE RAILROAD WATER AND COAL HANDLING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CLARENCE PATTERSON, Defendant in Error.)

*Opinion filed February 20, 1929.*

WHEELER & OEHMKE, (WILLIAM C. DUNHAM, of counsel,) for plaintiff in error.

H. G. MORRIS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On May 19, 1926, Clarence Patterson, defendant in error, while in the employ of plaintiff in error, the Railroad Water and Coal Handling Company, was accidentally injured. He filed his claim for compensation with the Industrial Commission on August 5, 1926. The arbitrator found

that as a result of the accident he was permanently and totally disabled, and entered an award for $7.50 per week for a period of 320 weeks and thereafter a pension for life of $192 annually, payable in the sum of $16 monthly. The case was reviewed by the Industrial Commission on petition of plaintiff in error and the award of the arbitrator was confirmed. On *certiorari* proceedings the circuit court of Richland county confirmed the decision of the Industrial Commission. This writ of error has been allowed by this court.

The sole contention made by plaintiff in error in this court is that the record fails to establish that the disability of defendant in error is due to the accidental injury. There was a stipulation by the parties that both of them were operating under the Compensation act on May 19, 1926; that the relation of employer and employee existed on that date and that defendant in error sustained accidental injuries arising out of and in the course of his employment; that notice of the accident was given and claim for compensation was made within the time required under the act, and that medical services had been furnished by plaintiff in error and $52.50 compensation had been paid.

The evidence reviewed by the Industrial Commission, and the additional evidence taken before the commission in behalf of the defendant in error, was given by the following witnesses and is in substance as follows:

Dr. James A. Weber, of the Olney Sanitarium: He took two X-ray views—posterior-anterior and lateral views. The plate showed no evidence of bony injury. He found that defendant in error had fibroid tuberculosis of both lungs. The examination of the X-ray plates was the only indication he had of the trouble, as he did not make a physical examination outside of palpating his right chest. He did not use any auscultatory method—that is, did not listen to his lungs. He examined his right chest by palpating to see if he could make out any fracture or callus. He did

not see any indications and did not form an opinion from this examination that he had received a recent injury. He further stated that his condition had probably existed for some period of time, and anything that would tend to lower his resistance would aggravate the condition in his chest. He made no further examination of him and could not tell what his physical condition was. He first met him on September 24, 1926, at which time he called on witness.

Clarence Patterson, defendant in error: He was twenty-six years old and had worked for plaintiff in error three or four weeks before he received his injury. He had previously worked for three years with a company which made concrete bridges and had worked for his father on a farm. He had not at any time been sick after he became twenty-one years of age and had never been sick very much. He was helping dig a ditch on the day he was injured. The ditch caved in on him and he was pulled out through the dirt that was thrown against him while in the ditch, the highest part of which dirt came to his shoulder when it broke loose. He was hurt through the right chest and back of his right shoulder. Those parts of his body had never been injured before. He was taken to Dr. Campbell, who examined him and said that there were three of his ribs that were broken. He was under Dr. Campbell's care for about forty days, at the end of which time he was told to go back to work but to do light work. He worked four days and quit because he could not stand the work on account of pain in his right chest and back of his right shoulder. He did not again try to work until about two days before the hearing, and quit work then because of pains in the same places already stated, and he was unable to work at that time. He had never had any serious sickness before the accident and had been in good health and able to do hard physical labor. In answer to a question he stated that he did not attribute his condition to his broken ribs, which have been healed up. The substance of his con-

tention is that the broken ribs were the result of the heavy pressure of the dirt against his chest at the time the ditch caved in and that his present trouble is also the result of the same injuries, from pressure of the dirt against his chest.

Peter Patterson, father of defendant in error: Defendant in error began work for plaintiff in error about the last of April. Before he worked for that company he did odd jobs around the neighborhood and also worked for Gerhart & Lyon for about three years. At one time he had trouble with his bowels and at another time with his ear, the latter time being about two years before he was hurt. He does not know of any time in the past year or two that he was away from work. He does not know whether he has lost any weight since he was injured. He has had a good appetite for the last month. He has not had the "flu" during the last year.

Charles Evans: He has known Patterson all of his life and lived near him for several years. He has seen him every working day for about two years before his accident. He and witness worked together for Gerhart & Lyons. He helped to work on the forms and also wheeled rock or gravel. That was in 1924. He did about the same kind of work on the viaduct in 1925. Witness worked with him there until April, 1926, and never observed anything that led him to believe that he was suffering from any disease or affection of the lungs during that time. He has appeared weak on the occasions that witness has seen him since that time.

Edward Mitchell: He worked with Patterson until his injury, and he shoveled dirt and gravel and wheeled it in a wheelbarrow and appeared to be an able-bodied man up until the time of his injury. He has done no work since the day he was injured and has "fallen off" every day.

Dr. Campbell testified for plaintiff in error that when he examined defendant in error after the accident he found that the fourth, fifth and sixth ribs of his right chest were

fractured. He treated him until June 29, when he discharged him as able to return to work. On that day his general physical condition was much better than it was at the time of the accident, for at the time of the accident he "was all run down." He came back within a week after witness had discharged him to go to work. At that time he did not complain of pains in the region where his injuries were but had a cough and complained of his stomach. He last saw him a month before he testified. At that time he made a general examination of him but found nothing wrong. He gave it as his opinion that the fractured ribs sustained May 19, 1926, did not in any way affect or cause the fibroid tuberculosis discovered by the X-ray pictures taken the following September. He further stated that if tuberculosis had been latent in his system before he was injured, the injury and shock attending the accident might have aroused it. He examined Dr. Weber's X-ray pictures the day he testified, and found that they were not clear, good diagnostic pictures and were not sufficient to diagnose any conditions that might be present.

It was stipulated between the parties that a report of Dr. V. S. Fildes of his examination of defendant in error made December 13, 1926, might be made a part of the record. His report was that the defendant in error had a temperature of 99° at two o'clock P. M. He was anæmic, under weight and with heart showing mitral murmur and tachycardia. His chest showed tuberculosis of right lung. Otherwise body negative." He stated in his report that defendant in error was not able to perform any kind of manual labor and should be at rest in bed for at least sixty days; that he considered recovery doubtful, and did not think that he would ever be able to perform hard manual labor.

The question presented for decision is wholly one of fact, namely, whether the accidental injury caused the disability of the defendant in error. The record shows that

prior to the accident he worked steadily at hard physical labor and was apparently a healthy, able-bodied man. His injuries were in his right side and back. While the broken ribs healed perfectly, he was unable to work after the injury because of pain in his right chest and back, and four months after the accident on examination he was found to be suffering with tuberculosis of the right lung, which had existed for some period of time. The medical testimony is to the effect that if he had tuberculosis in a latent state at the time of the accident the injury and shock would tend to arouse it. The evidence of the lay witnesses who knew him and observed him before and after the accident is to the effect that he was apparently able-bodied and did hard labor without visible effect, and that after the accident his health failed and he appeared to grow weaker and weaker up to the time of the report of Dr. Fildes, whose judgment at that time was that his recovery was doubtful and that he would never be able to perform hard manual labor.

While an award under the Compensation act cannot rest upon conjecture or surmise or upon the choice of two views equally compatible with the evidence, yet it is the province of the Industrial Commission to draw reasonable inferences from evidentiary facts, and this court will not set aside a finding of the commission unless manifestly against the weight of the evidence. (*Rissman & Son* v. *Industrial Com.* 323 Ill. 459; *Goodman Manf. Co.* v. *Industrial Com.* 316 id. 394.) The finding of the Industrial Commission that the disability of defendant in error is due to the accidental injury and that the tuberculosis is not an independent intervening cause is not manifestly against the weight of the evidence. Under the decisions of this court in *Cameron, Joyce & Co.* v. *Industrial Com.* 324 Ill. 497, and *St. Louis Nat. Stock Yards* v. *Industrial Com.* 329 id. 221, the judgment of the court should be, and is, affirmed.

*Judgment affirmed.*