[No. 25212. *En Banc.* February 14, 1935.]

JOHN RIKSTAD, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*F. W. Loomis,* for appellant.

*The Attorney General* and *Browder Brown, Assistant,* for respondent.

MILLARD, C. J.—About ten a. m., August 20, 1932, John Rikstad was injured while employed as a truck driver in highway construction. A truck operated by Rikstad was stalled in the mud. The sudden jerk of another truck used to pull Rikstad's truck from the mire threw him against the end of a steel rod used to open the tail gate of the truck. The impact of the rod against his right abdomen under his ribs caused great

[1]Reported in 41 P. (2d) 391.

suffering to the victim for a period of from five to ten minutes. He then went to the front of his truck, started its engine, and operated the truck the remainder of the working day, during all of which time there was pain in the region of the place where the end of the steel rod struck him.

Rikstad was compelled to be idle the following day because of inclement weather. Thereafter, until September 1st, "I stayed in bed most of the time at home, cramped up." He never returned to work of highway construction. On September 1st he was assigned by the charity commission of Grays Harbor county to the work of weeding at the county welfare farm. After five minutes of that toil, he became so ill that he returned to town. That same day, he was sent by the county charity commissioner to a hospital as a charity patient. He remained in the hospital until September 23rd.

His employer did not, nor did the physician who attended him at the hospital, make any report to the department of labor and industries of Rikstad's injury. The department did not receive any information concerning the accident until November 21, 1932, when Rikstad filed a claim for compensation because of the injury. The employer refused to sign the report of accident, claiming that his firm had no knowledge of the accident and was unable to locate anyone who had any knowledge of the injury.

Claimant testified that the foreman, a member of the firm that employed Rikstad, was standing in a position where he must have seen the accident. Two others testified to the same effect. Claimant also testified that, after leaving the hospital, he met the foreman on the street and informed him respecting the injury. The foreman told him it was "too bad." Claimant also testified that, when he entered the hospital on September 1st, he informed his attending

physician as to the cause of his injury, and that the physician advised the claimant that his injury was not compensable.

The physician testified that the patient did not, at the time he entered the hospital, give a history of any accident that occurred to him; that, sometime after claimant left the hospital, he called on the physician "and asked me if an accident could have caused his condition." The physician advised him that it could not.

Prior to this controversy, the attending physician prepared a report, which became a part of the records of the hospital, which is corroborative of the physician's testimony that he knew nothing of an injury to claimant during the time he was a patient in the hospital. That hospital record was made September 3, 1932, the day after an X-ray examination disclosed that the claimant was suffering from a large penetrating ulcer of the lesser curvature. That is, the record was written two weeks after claimant's injury, two days subsequent to the date he became a patient in the hospital, and at least three weeks prior to the time the physician claimed he first learned that the claimant had suffered the injury for which he now seeks compensation. That report reads:

"Patient entirely well until 1929 at which time he first noticed epigastric distress coming on a few hours after eating, at this time he was drinking considerable moonshine. He has had this pain of a burning character—non radiating since that time. Its location has changed to under left rib margin into M. C. L. Lately he has had a few tarry stools. Never vomited."

On December 1, 1932, the claim filed November 21, 1932, by Rikstad for compensation was denied "for the reason that the workman's condition was not the result of injury alleged." On January 25, 1933, the

claimant applied to the joint board for a rehearing, which was granted. He prayed

" . . . that the refusal of his said claim be reversed; and his said claim reopened; that he be allowed time loss from the date of his injury until same is cured or until the extent and degree of his permanent disability can be determined; and that he then be allowed compensation for such permanent disability, if any, . . ."

On February 15, 1933, a hearing on the claim was had at Hoquiam before an examiner. No witnesses were called by the department. Four witnesses, in addition to claimant, testified in behalf of claimant. One, a physician, testified that, if the claimant had ever had ulcer prior to the accident, it would have entirely healed, and that his accident was the sole cause of his disability. Two of the witnesses were fellow workmen of claimant, and they corroborated claimant's testimony as to the way the accident happened, how many minutes elapsed after the accident before the claimant could operate his truck, and that the foreman was so close to the accident he must have seen it. One other witness testified respecting claimant's freedom from pain or discomfort when, as an amateur pugilist, he was subjected to hard blows to the stomach by boxers and sparring partners. This was to support the claimant's position that, though in 1928 and 1929 he had vomited blood three times, due to excessive use of "moonshine," he became, in July, 1929, and still is, a total abstainer, and that, since the date he discontinued the use of intoxicants, he has not had any stomach trouble.

After the transcript of the testimony of the foregoing hearing was submitted to it, the joint board decided that the physician who attended claimant while a patient should be called as a witness. On March 20,

1933, the joint board entered an order to that effect; and on April 26, 1933, the department held another hearing at Hoquiam (designated "a continuation of a hearing" of February) for the purpose of taking the testimony of that physician. The recitals of the order entered by the joint board March 20, 1933, so far as material here, are as follows:

"This matter comes before the Joint Board for a review of the order of the Supervisor of Industrial Insurance, dated December 1, 1932, rejecting the above claim upon the grounds that the workman's condition of gastric ulcer was not due to an injury received by him August 19, 1932.

"That a review of the claim file indicates that on November 20, 1932, the claimant, while in the employ of James Tobin & Son, contractors, engaged in backing a loaded truck, which was being towed by a Caterpiller tractor, the Caterpillar started off with a jerk and threw the claimant against a steel rod of the truck, striking his abdomen; that his breath was taken away but he continued working; that the employer declined to certify to said injury and Dr. Harry Watkins of Aberdeen stated that claimant did not consult him for any injury.

"That the claim file shows a written X-ray report of the claimant by Dr. E. D. McCarty of the Aberdeen General Hospital of September 2, 1932, determining that the claimant was suffering from a large penetrating ulcer of the lesser curvature; that the hospital report of the Aberdeen General Hospital, signed by Dr. Harry Watkins, stated that the claimant was entirely well to 1929 at which time he first noticed epigastric distress coming on a few hours after eating, at this time he was drinking considerable moonshine. He has had this pain of a burning character—nonradiating since that time. Its location has changed to under left rib margin into M. C. L. Lately he has had a few tarry stools but never vomited. That the Department thereupon rejected said claim.

"That at the Joint Board hearing the claimant testified that following said injury as above described

he reported to Dr. Harry Watkins of Aberdeen, who informed him his condition was not a compensable condition; that the claimant admitted that during the years 1928 and 1929 he had suffered from a similar condition, from which he vomited blood frequently; that since 1929 he had refrained from imbibing any alcoholic beverages, which he claimed to have been the cause of his vomiting; in 1932 he engaged in two boxing matches in Aberdeen during the training period had a trainer strike him violently in the abdomen with his fist, which failed to cause him any distress or discomfort.

''Ted Hultman verified the claimant's statement of injury as did Frank North. One John Rainey testified that while conditioning the claimant for his boxing bouts in 1932 he had struck him violently in the abdomen and the claimant did not flinch.

''Dr. Edward B. Riley testified as a witness on behalf of the claimant and stated that the claimant's disability was due to his injury of August 19, 1932, and that the former bloody vomiting had no indication on his present condition and the claimant was suffering from the results of his injury.

''And therefore ordered that the Joint Board deems the professional opinion of the original attending physician, Dr. Harry Watkins, should be taken on behalf of the Department.''

The hearing of April 26, 1933, was before the same examiner who conducted the hearing of February 15, 1933. The only witness testifying was the claimant's attending physician, who was cross-examined at length by claimant's counsel.

The physician testified that he first treated the claimant during 1929 for epigastric distress. In September, 1932, he treated the claimant because of burning pain in the region of the abdomen, and that he made a diagnosis of gastric ulcer in the lesser curvature of the pylorus. This diagnosis was based upon an X-ray examination made of the claimant's intestines

September 2, 1932. He then proceeded to treat the claimant for the disease—gastric ulcer. Not until after claimant left the hospital did he mention his injury to the physician as having been the cause of the development of the disease of ulcer of the stomach. It was the opinion of the physician that the ulcer from which the claimant was suffering was not caused by the alleged injury of August 19, 1932; that the ulcer had developed in 1929, although it was not especially disabling during that period of time.

On May 22, 1933, based on the foregoing testimony, the joint board found that the claimant, prior to the injury of August 19, 1932, was suffering from the pre-existing disease of gastric ulcer, and that his recovery from his injury of August 19, 1932, was delayed and retarded by that pre-existing disease. The joint board further found

" . . . that had the claimant not been suffering from said pre-existing disease of gastric ulcer on August 19, 1932, and met with the aforesaid injury he would not have been temporarily totally disabled for a greater period of time than two weeks by reason of said injury alone nor would he have sustained any permanent partial disability therefrom."

Thereupon, the joint board entered its order

" . . . that the action of the supervisor in rejecting the claim be reversed with instructions to allow the claim and to segregate pursuant to paragraph L, section 7679, Remington's Compiled Statutes, and award claimant two weeks' time loss and close the claim with no permanent partial disability."

From this order, the claimant appealed to the superior court for Grays Harbor county, and the cause tried to the court upon the certified departmental record. The court found that the claimant had failed to overcome the presumption of the correctness of the department's decision,

" . . . the decision of the department shall be prima facie correct and the burden of proof shall be upon the party attacking the same." Rem. Rev. Stat., § 7697 [P. C. § 3488].

The entry of the judgment of dismissal followed. Plaintiff appealed.

■ Although the decision of the department, under Rem. Rev. Stat., § 7697 [P. C. § 3488], must be considered as *prima facie* correct and is to be kept in mind, it can not have the same presumptive effect when the testimony is taken before an examiner. The members of the joint board and the trial court were in no better position to weigh and consider the testimony than are we.

"The decision of the joint board was based solely upon the record and files of the department and testimony taken before examiners. The case was presented on the same record in the superior court, no additional evidence having been offered before the trial judge. The cause is here for trial *de novo*. *Johnston v. Department of Labor and Industries,* 163 Wash. 549, 2 P. (2d) 67. In considering the record, we shall bear in mind that the statute provides that the decision of the department shall be *prima facie* correct, but we must also take into account the fact that the joint board and the trial court decided the case on the same record presented to us; neither having a better opportunity to judge the credibility of witnesses than we have. *Cheney v. Department of Labor and Industries,* 175 Wash. 60, 26 P. (2d) 393." *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650.

■ What is the evidence adduced on behalf of appellant? One physician testified that, if the claimant had ever had ulcer prior to the accident, which was doubtful, it would have entirely healed, and that his accident was the sole cause of his disability. Before the injury, the claimant was an able-bodied man, competent and capable of performing work at manual

labor. He could undergo without discomfort the most grueling punishment in pugilistic encounters. He was not suffering from disease or disability which prevented him from following his customary occupation. He vomited blood three times in 1928 or 1929, some three or four years prior to the accident, because of over-indulgence in intoxicating liquor. Since July, 1929, he has not touched intoxicants, and never since that time, until the injury of which he now complains, did he have stomach trouble or illness of any kind. That he was injured in the manner described by him, is not denied. That he is now disabled, can not be gainsaid.

To controvert the foregoing is the testimony of one witness, a physician who attended claimant at the hospital. That physician was of the opinion, apparently based on the fact of the vomiting of blood in 1928 or 1929, that the ulcer from which the claimant was suffering developed in 1929 and was not caused by the injury sustained by claimant on August 20, 1932. The joint board found that the physician's "testimony indicates that the ulcer had developed in 1929 although it was not especially disabling during that period (1929 to date of accident) of time."

Under the physician's testimony, in the light of the testimony of claimant and his lay witnesses respecting his physical condition and freedom from sickness during the period from July, 1929, to date of injury, the ulcer was dormant or quiescent, and by reason of the injury it was made active. Under all of the evidence, including the testimony of claimant's medical witness and the department's physician, the claimant was free from ulcer at the time of the accident which so bruised him that an ulcerous condition was caused, or, the disease of ulcer suffered by him in 1929 was present in 1932, but it was quiescent, and by the injury it was

lighted up and made active. In either event, it was a compensable injury under the workmen's compensation act.

In *Gilcrest Lumber Co. v. Rengler,* 109 Neb. 246, 190 N. W. 578, 28 A. L. R. 200, it was held that the disability of an employee following a slight bruise received while at work, which of itself was insufficient to cause disability, but which, because of a pre-existing syphilitic condition, formed into an ulcer and broke, disabling the claimant from work for a long time, was caused by an accident arising out of, and in the course of, his employment, for which he was entitled to compensation. The court observed that, while the disease was a contributing factor to the disability, it was the bruise which was the proximate cause, for the evidence was convincing that, without the injury, there would have been no ulceration.

"Before the injury, the claimant was an able-bodied man, competent and capable of performing work at manual labor, and was not suffering from disease or disability which prevented him from following his customary occupation. Some months after the injury, the claimant developed tuberculosis in the region of the sacroiliac joint, and later pulmonary tuberculosis, for which he was being treated at the time of the trial, and his condition was improving.

"The case in the superior court was heard upon the records and files and the testimony taken before the department, and also the evidence taken before the court.

"There is little in this case except a question of fact. If the claimant, at the time of his injury, was afflicted with the disease of tuberculosis, then the case would be ruled by subdivision (1) of Rem. Rev. Stat., §7679. On the other hand, if the claimant was not suffering from tuberculosis at the time of the injury, but carried a latent, or quiescent, tuberculous germ or bacilli, and by reason of the injury this was lighted up and made active and his tuberculous condition resulted there-

from, then he would be entitled to compensation. *Railroad Water Co. v. Industrial Commission,* 334 Ill. 52, 165 N. E. 225. *Maurer v. South Penn Collieries Co.,* 295 Pa. 69, 144 Atl. 822.

"The case turns to a considerable extent on the testimony taken before the superior court. The medical testimony on the question of whether the tuberculous germ was dormant or active at the time of the injury is in conflict. . . .

"After reading and considering all of the evidence taken before the department, and also before the superior court, we are of the opinion that the finding of the trial court, to the effect that, at the time of the injury, the tuberculous germ was dormant or quiescent, is sustained by the preponderance of the evidence, and that the *prima facie* effect of the order of the department was overcome." *Hadley v. Department of Labor and Industries,* 174 Wash. 582, 25 P. (2d) 1031.

We are convinced by our examination of the record certified to the superior court by the department and brought to this court by appellant claimant that the evidence preponderates in support of appellant's contention. That is, the appellant was free from the disease of ulcer at the time of the accident, and the injury thereby sustained caused the ulceration which disabled him. The evidence is convincing that, without the injury, there would have been no ulceration.

The judgment is reversed, and the cause remanded with direction to the superior court to reverse. the order of the joint board and remand the case to the department for further proceedings in accordance with this opinion.

MAIN, MITCHELL, TOLMAN, HOLCOMB, GERAGHTY, and BLAKE, JJ., concur.

BEALS, J. (dissenting)—Considering the evidence in the light of the statutory presumption in favor of the

findings of the joint board, I am unable to agree with the majority in holding that the evidence preponderates in appellant's favor. To me, appellant's case seems vague and unsatisfactory in the extreme, and I am convinced that the trial court correctly held that appellant wholly failed to bear the burden resting upon him and requiring him to make a case clearly indicating that the ruling of the joint board was incorrect. I accordingly dissent from the conclusion reached by the majority.

STEINERT, J., concurs with BEALS, J.