(No. 3025—

ELVA JENNINGS PENWELL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 13, 1941.*

JOHN W. PREIHS, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Elva Jennings Penwell filed her claim herein on November 12, 1936, alleging that on February 2, 1936 while employed as a Supervisor at the Illinois Soldiers' and Sailors' Children School at Normal, Illinois, a charitable institution operated, controlled and managed by the State of Illinois, she was injured in an accident arising out of and in the course of her employment, for which an award is sought under the terms of the Workmen's Compensation Act. In addition to the transcript of evidence, filed November 13, 1940, oral appearances have been made by Counsel and written Statements, Briefs and Arguments are filed herein.

The respondent, by the Attorney General, concedes that the Court has jurisdiction of the parties and of the subject matter under the terms of the Illinois Workmen's Compensation Act, and further that the record supports a finding that the accident arose out of and in the course of claimant's employment.

The Attorney General submits that the questions of primary importance at issue are:

*First,* whether or not the claimant's condition is the result of the accidental injury.

*Second,* whether or not the respondent is liable for the Doctor bills shown to have been incurred by claimant.

*Third,* whether such medical bills are reasonable and proper.

The record shows that claimant had been employed at the institution in question for more than a year prior to February 2, 1936, and that at the time of her accident on said latter date she was receiving wages in the amount of $100.00 per month with a further allowance for maintenance on the basis of $24.00 per month, or a total of $1,488.00 per year.

Claimant's duties required her to exercise supervision over children and employees in the institution, and to make frequent inspection of the several buildings connected therewith. Claimant is a single woman having been granted a divorce from her husband in 1931. At the time of the accident she was the mother of three children, Bruce V. Penwell, Jr., thirteen years of age, Carolyn Penwell, aged twelve years, and Janey Penwell, aged nine years, all of whom were under her care and supported by her. On February 2, 1936 about four o'clock P. M. she left the main building of the institution to inspect another building. It was cold weather and ice and snow had frozen on the steps. of the building. Her foot slipped on one of the upper steps, and she was thrown backwards and down the stairs. She struck on her head and back, and was found and picked up at the bottom of the steps. She was taken to her room and placed under the care of Dr. L. Shafton, the School physician. Her body was bruised and blood was coming from her ears and nose. The evidence discloses that prior to the accident, claimant had enjoyed good health and passed a satisfactory medical examination at the time she became employed at the institution. At that time her eyes tested 20/20. After the fall she was confined to her room until Saturday, February 14, 1936. Pains had developed in her abdomen and side, in her shoulder and in the right side of her head with some fever. Severe pain developed in the left eye and the sight of that eye gradually faded out during the next three days. On February 20th complete loss of vision had resulted in the left eye. At that time Dr. Hartenbower, an eye specialist, was called, and suggested that the claimant should go to Mayo Brothers Clinic. Claimant was taken to the Clinic at Mayos, and entered Worrall Hospital February 22, 1936. The left optic nerve was swollen and the edema spread to the spinal cord causing transverse myelitis. While at Mayos the sight of the right eye was lost and a general paralysis condition ensued. She stayed at the Clinic until April 3, 1936, by which time the paralysis had receded to the sixth Dorsal Vertebrae below the collar bone. Her arms were still useless and she was completely paralyzed below that point. The treatment at Mayos consisted of serum injections to reduce the edema of the optic nerve, and spinal punctures, intravenous glucose, special diets, etc. On April 4, 1936 claimant entered the B.

J. Palmer Chiropractic Clinic at Davenport, where she remained until June 1, 1936, under the care of Dr. B. J. Palmer. There was intermittent improvement in her eyesight, but at the time she left the Palmer Clinic she was still practically blind, having approximately one-eight (1/8) vision in one eye with very slight use of her hands and arms, and the rest of her body in a state of placid paralysis.

Claimant enter Johns Hopkins Hospital at Baltimore on June 5, 1936 and remained there until June 17, 1937. She there received massage and ultra-violet ray treatments. Her eyesight improved until she could read with one eye. The paralysis receded almost to her waist and she regained the use of her arms and hands. From Baltimore she was taken to her home at Beecher City, Illinois, under the care of a registered nurse who continued the massage and sun-bath treatments.

On February 10, 1938 she entered the Laughlin Hospital at Kirksville, Missouri, where she remained until June 27, 1938. During her stay there, a lessening of the spasticity of her limbs resulted. During the previous year, this spasticity had increased until it was with difficulty that the legs could be straightened or moved. After leaving Kirksville on June 27, 1938 she returned to her home at Beecher City and remained until August 25, 1938, when she returned to Kirksville, residing outside the Hospital, but receiving treatments prescribed by the Hospital staff. She returned to Beecher City June 1, 1939, back to Kirksville September 1, 1939, and back to Beecher City June 1, 1940 where she now remains. At the present time she has paralysis of the motor and sensory nerves below the Sixth Dorsal Vertebrae, incontinence of urine and faeces. There is a tendency of contraction and spacticity of limbs, and because of constant confinement to bed, she suffers bed sores which require medical care and dressings two or three times a day. Claimant has purchased an ultra-violet-ray lamp so as to receive the light treatments at her home, and is occasionally removed from her bed to a wheel chair. Claimant testified that judging from her condition during the past four years and the result of treatments received at the various hospitals, she will require the services of a practical nurse and a Doctor so long as she lives, because of the tendency of her muscles to contract and the continued

existence of bed sores as a result of her rather constant confinement to her bed.

Reports from the several institutions where Mrs. Penwell received treatment, appear in the record. The court, desiring further information as to her immediate condition, of its own accord, requested an examination of claimant at the Herndon Clinic in Springfield, Illinois, and a report of such examination by Dr. R. F. Herndon appears in the record. Claimant's condition seems to be one which the medical profession has been unable to greatly relieve. Dr. Herndon made a complete study of the reports from the several hospitals, and made a thorough examination of claimant. Without reviewing all of the medical testimony, and for brevity we quote from the conclusion of Dr. Herndon's report as follows:

"Examination shows a well-developed and nourished, healthy appearing woman of about 40, lying quietly in bed. She is cheerful, alert and very cooperative. Neurological examination reveals a sharply defined area of anesthesia extending about the body as a girdle at the level of the costal margins and the spinous process of the first lumbar vertebra. Below this level there is a complete absence of all forms of sensation. There is a complete spastic paralysis of the lower extremities with increased tendon reflexes, unsustained clonus, and positive Babinski and related toe signs. The legs are extremely spastic and stimulation produces involuntary contractions. There is only moderate general atrophy of the lower extremities and despite their spasticity they can be completely straightened. Above the costal margins there are no neurological abnormalities. Examination of her head and neck, heart and lungs and spine reveal nothing abnormal. Blood pressure 122/80.

"At the present time she has almost normal vision in her right eye and useful eccentric vision in her left eye, but the left eye has a large central blind spot that prevents reading, etc. She regards herself as normal to the rib margins. Below this she is completely paralyzed.

"From the above it is my opinion that following her fall Mrs. Penwell developed a diffuse, acute myeloencephalitis which, after a few exacerbation, gradually subsided leaving the residuals described. The ultimate cause of such condition is unknown, but there is some reason to believe they are virus disease (that is due to ultramiscropic organisms). While her accident was not the real cause of her trouble, I believe that it must be regarded as the precipitating factor, and that if it had not occurred she might never have had the illness which followed. It is possible, though very improbable that she may improve in the future but there is no reason to believe that she will ever be self-supporting. In short, it is my opinion that she is totally and permanently disabled and that her disability arose as the result of her accident.

"From the negative standpoint there is absolutely no evidence of a syphilitic factor in this case nor do I believe that she had an ordinary bacterial infection such as might have resulted from a skull fracture."

If it can reasonably appear that there is a causal connection between the accident and the resulting injury or death of the workman, an award is justified under the provisions of the Compensation Act. If a dormant condition which might not cause disability is accelerated by reason of an accident so that disability results, such disability is compensable. If death or disability is fairly chargeable to an accident suffered in the course of employment as an efficient cause, compensation may be awarded even though, as in a sarcoma case, such sarcoma previously existed and was aggravated or accelerated by the injury.

In *Railroad Water and Coal Handling Company* vs. *Industrial Commission,* 334 Ill. 52, the employee was injured in the chest while helping dig a ditch. Four months after the accident an examination disclosed tuberculosis in the right lung, which apparently had existed for some time, but which had not previously evidenced itself. The medical testimony was that the accident had caused the latent tuberculosis to "light up." The court, in sustaining an award, said:

"The finding of the Industrial Commission that the disability of defendant in error is due to the injury, and that the tuberculosis is not an independent intervening cause, is not manifestly against the weight of the evidence. Under the decisions of this court—the judgment of the lower court should be and is affirmed."

The medical reports, as considered and summarized in the report of Dr. Herndon, is that claimant is totally and permanently disabled, and that her disability arose as the result of her accident. The court feels impelled to accept this proof as determinative of the issue as to whether claimant's condition is the result of the accidental injuries, and we find that claimant, while an employee of respondent, suffered an accidental injury which arose out of and in the course of her employment, and which has resulted in the total permanent disability of the claimant.

As claimant was receiving wages of $100.00 per month plus a maintenance allowance of $24.00 per month, her annual wage scale at the time of such accident was $1,488.00, or an average weekly wage of $28.61. The dependence of three children upon claimant authorizes a weekly wage percentage of sixty-five (65) per cent for compensation payments, which would be $18.60, but under the limitation of Section 8 (j) 3 of the Act, the maximum amount payable is $18.00 per week. The record discloses that claimant received $100.00 for non-

productive time subsequent to her injury and in excess of all payments due her for wages at the time of her injury, and such sum should be deducted from any award made herein. In view of claimant's earnings and the three dependent children, she is entitled to an award herein of four times the average annual earnings, subject to a maximum limitation of $5,500.00. In view of her continued disability she is further entitled to a pension of $660.00 per year, such pension being payable at the rate of $55.00 per month.

As to the further issue of whether the respondent is liable for the doctor bills under the evidence contained in the record, the court finds:

That respondent had immediate notice of claimant's accident and of her increasing disability that immediately followed, and of her need for specialized treatment incidental to the blindness and paralysis that resulted therefrom.

J. H. Russell, Managing Officer of the institution where she was employed, reported: "Mrs. Penwell was going between buildings occasioned by her duties. The concrete steps were slippery due to the snow and ice, and she slipped and fell down the steps. Dr. Shafton, Institutional Pediatrician, who examined her, reported bruises and a severely shaken up condition; in a few days the eyesight was completely gone in one eye, and she determined to go to the Mayo Clinic for observation, advice and treatment. I saw her once thereafter at her hotel in Davenport, Iowa, at which time she had regained partial sight and some control of her head and arms, although she was still confined to bed. Since Mrs. Penwell consulted the local eye specialist and left for Rochester our institution has not since been solicited by her for medical aid."

The consensus of the decisions of Illinois law upon the question of furnishing medical aid is that, "If there has been a request of the employer to furnish such services, or if the employer has knowledge of the accident and the need of such services, and fails or refuses to furnish them, then the employee clearly has a right to secure such services and to hold the employer liable for them. If there is such a request by the employee, or such knowledge on the part of the employer, the services should be promptly provided, and in such case the employer is liable, unless there is a definite record that

the employer had tendered such services from other sources and the employee had refused to accept them.''

In the case of *Old Ben Coal Corporation* vs. *Industrial Commission,* 311 Ill. 35, the employer took the injured employee to a hospital at Christopher, and the next day he was taken by his friends and family to a different hospital, where he remained about a year. The employee testified that he demanded medical and hospital treatment after being moved, but that none was tendered. The employer claimed it had its own staff of physicians at Christopher and would have furnished such services if the employee had not selected his own. In sustaining an award, the court said: ''The employer is not given the right, simply because the employee leaves the hospital to which the employer took him, to avoid all liability for hospital and medical treatment without tendering other services of like character, unless the facts show that the employee, by leaving the hospital, elected to secure a physician and hospital at his own expense.''

If the employee has already gone to a hospital or secured his own physician, the employer should make a definite offer to provide such services, and in the absence of such offer the employee is justified in attempting to gain such medical care and hospitalization as will cure or relieve him of his disability. The evidence herein discloses no offer by respondent to give any specialized care or treatment which was apparently required by claimant's condition, and no objection appears to have been made at any time by respondent as to the hospitalization and treatment which claimant was procuring. The testimony shows that such services were reasonable and were furnished by some of the best known medical institutions in America. The testimony is further that the items of expense and charges made by those institutions and the moneys expended by claimant in obtaining such services were reasonable and necessary. Same is true in regard to the local medical and nursing services rendered to her at her home in Beecher City. The total amount of such expenditures, all of which claimant has paid or obligated herself to pay from her own funds or from moneys borrowed by her, amounts to $8,188.95, with an additional sum of $27.00 for ultra-violet-ray lamp, used to relieve the skin condition, expended or incurred up to and including October 22, 1940.

The testimony further shows that claimant still requires the attendance of a practical nurse and medical services; that her paralysis extends from the waist down and is of the spastic type; that she has no control over her lower limbs nor over urine or faeces; that the treatment now being given her consists of osteopathic manipulation, massage, and light treatments to release the spastic condition to prevent deformity and stimulate circulation, and medical treatment for the relief of bed sores; that such treatments are given her once or twice daily and the light treatments three times a week.

The court therefore further finds that claimant is entitled to such further care as is reasonably required to relieve her from the effects of the injury, as provided in Section 8, Par. (a) of the Workmen's Compensation Act.

In accordance with the foregoing findings, an award is hereby made in favor of claimant, Elva Jennings Penwell, as follows:

For total permanent disability.................................$5,500.00

As the disability began February 2, 1936 and is compensable at the rate of $18.00 per week, $4,626.00 of said award will have accrued by January 16, 1941. The sum of $100.00 heretofore paid for non-productive time is to be deducted, leaving $4,526.00 due and payable as of January 16, 1941. The balance of said sum of $5,500.00, i. e. $874.00, is payable in forty-seven (47) weekly installments of $18.00 per week, and one payment of $28.00.

Thereafter and in addition to said sum of $5,500.00 there shall be due and payable to claimant in accordance with Section 8-20 (f) of the Workmen's Compensation Act of Illinois, a pension during her life annually, in the sum of $660.00, being twelve (12) per cent of said sum of $5,500.00, payable in monthly installments of $55.00 per month, commencing after the final payment of said award of $5,500.00 has been paid.

In addition to the foregoing, a further award is made in favor of claimant for necessary medical, surgical and hospital services heretofore expended or incurred by her to cure or relieve from the effects of her injury, in the sum of $8,215.95, which said sum is due and payable to her at the present time.

This court is powerless to place a definite limitation upon the time such medical, surgical and hospital services could be or shall be rendered to claimant. The only authority for such payment, and the only limitation thereon, is that such expenditure shall be that which may be "reasonably required to cure or relieve from the effects of the injury." (*Newman Co.* vs. *Ind. Com.*, 353 Ill. 190.)

As above stated, the proof here shows that medical and nursing services are still necessary to relieve claimant from the effects of her injury, and that such services are now be-

ing and can be rendered in her home. There is no proof indicating any malingering or other circumstance which would enable us to say that further services are not reasonably necessary to relieve Mrs. Penwell from the effects of her injury. In the same manner that we are powerless to place a definite limitation upon the time and amount of such services, so do we regard it as improper for us to attempt to anticipate what such requirements may amount to, although there is some evidence as to the cost of the present treatment. We therefore find that claimant is entitled to such further care as is reasonably required to relieve her from the effects of her injury.

No award is made at this time for the payment of problematical and anticipated expenses that may be incurred by claimant in attempting to further cure or relieve her disability, the propriety and the amount of any such future payments being considered to be a matter for the discretion and action of the court if and when such expense has been incurred.

This award, being subject to the provisions of an Act entitled ''An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof'' (Ill. Revised Statutes, 1939, Bar Association Edition, Ch. 127, Pars. 180-181), and being subject also to the terms of an Act entitled ''An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies until the Expiration of the First Fiscal Quarter after the Adjournment of the next Regular Session of the General Assembly,'' approved July 1, 1939 (Sess. Laws 1939, p. 117) ; and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided by the foregoing Acts.