[No. 31452. Department Two. November 24, 1950.]

F. M. JACOBSON, *by C. Bernhardt Jacobson, his Guardian, Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 224 P. (2d) 338.

*The Attorney General* and *Jack Rowles, Assistant,* for appellant.

*Powell & Nethercutt* and *Frank P. Weaver,* for respondent.

ROBINSON, J.—This is an appeal from a judgment, rendered in accordance with a verdict of a jury, reversing an order of the board of industrial insurance appeals of the department of labor and industries of the state of Washington, which had disallowed the claim of respondent for compensation under the provisions of the industrial insurance act. The facts of the case are as follows:

Respondent, Foy M. Jacobson, was hospitalized in November, 1944, at which time a diagnosis of paranoid schizophrenia was made. His response to therapy was good, and he was discharged in January, 1945. After several months spent working on a farm belonging to his family, he obtained, in October of the same year, a job with the Carstens Packing Company in Spokane. With minor interruptions, he worked with this company until March 19, 1947. It is conceded that he performed his duties satisfactorily, although he was regarded by his fellow employees as somewhat shy and quiet, and perhaps more than ordinarily reserved.

On March 19th, he was finished with his regular work by noon, and was assigned to help an assistant foreman, Mr. Berry, in cleaning out a tank car which had been filled with soybean oil. The only entrance to this car was through a manhole, approximately fifteen inches in diameter, located at the top of the car. With Berry remaining at the opening of the manhole, respondent descended into the car, and pro-

ceeded to wash it out, using a hose from which either hot or cold water was running. It was warm in the car, and Berry told respondent to come up occasionally if it became uncomfortably hot. Respondent came up several times and appeared to be in good condition. On the last occasion, he stated that he was almost finished, and again descended into the car. Shortly thereafter, Berry heard him cry out. He at once called two men to assist him, and, when they entered the car, they found respondent lying on the floor in a semiconscious state. He was removed and laid on a stretcher, perspiring and gagging. Some time thereafter, he was taken to a hospital, where his condition was diagnosed as an acute heat stroke, with first and second degree burns on his face and one of his arms.

With hospitalization, his physical condition improved, and he was discharged on April 7th. His mental condition, however, rapidly deteriorated. He appeared to be suffering symptoms comparable to those he had manifested while undergoing treatment for schizophrenia. Five days after discharge, he was returned to the hospital and placed under the care of his former physician, Dr. Lewis. The therapy which had previously been successful did not prove to be so on this occasion; and since then, it is conceded that he has suffered from schizophrenia to such a degree that he is no longer able to engage in gainful employment.

On May 6, 1947, a claim was filed on behalf of respondent by his father as guardian, alleging that respondent's condition was the result of an industrial injury. The supervisor of industrial insurance accepted responsibility for respondent's condition, and medical expenses and time loss were paid. The employer appealed from the decision, and hearings were held before the joint board. On August 8, 1949, the board of industrial insurance appeals, which had succeeded the joint board, entered an order reversing the supervisor and disallowing all claims after July 24, 1947. The board's order was based on the ground that respondent's condition was due to a pre-existing mental condition, to wit: "Schezophrenia, a chronic mental disorder, and not

due to his injury of March 19, 1947." Respondent thereupon appealed to the superior court, and, after a trial to a jury, which rendered a verdict in respondent's favor, judgment was entered in favor of respondent.

The only serious dispute as to the facts relates to the question of whether hot or cold water was being used to clean out the tank car. Mr. Berry testified positively that cold water was employed. Respondent's father, however, testified that both Mr. Berry and Mr. Hale, the plant superintendent, had told him that the car was being cleaned with hot water. This testimony seems somewhat more consistent with the undisputed facts. Thus, although the date was only March 19th, Mr. Berry testified that he told respondent, before he began his work, that, if it got too hot in the car, he should come up and rest, and further testified that he actually did come up several times. Even if the effect of the warm sun beating on the exterior of the tank car is sufficient to explain this, it is less adequate to account for the fact that the injury suffered by respondent was a heat stroke. Further, there was no explanation for the burns which the doctor who treated him testified that he sustained, other than that they were caused by hot water. In any event, from whatever cause, it is clear, from all of the testimony, that it was abnormally warm inside the car while respondent was cleaning it.

What actually happened within the car is, of course, not clear, it appearing that respondent was in no condition to give a coherent account. One of the doctors testified that it was as reasonable to assume that a recurrence of schizophrenia caused respondent to fall in the car as it was to assume that a fall in the car caused a recurrence of schizophrenia. However, it does not seem to be disputed that there was evidence from which the jury could have found that the accident was brought about by reason of the excessive heat within the car, and that it consequently amounted to an industrial injury. If this injury resulted in a recurrence of respondent's schizophrenia, there can be no doubt about his right to recover, and the fact that he

might have been predisposed to this type of mental disorder would not affect that right.

It has been established, in a long line of cases, that, if an injury, within the statutory meaning, lights up or makes active a latent or quiescent infirmity or weakened physical condition occasioned by disease, then the resulting disability is to be attributed to the injury and not to the pre-existing physical condition. *Ray v. Department of Labor & Industries,* 177 Wash. 687, 33 P. (2d) 375; *Rikstad v. Department of Labor & Industries,* 180 Wash. 591, 41 P. (2d) 391; *Pulver v. Department of Labor & Industries,* 185 Wash. 664, 56 P. (2d) 701; *Miller v. Department of Labor & Industries,* 200 Wash. 674, 94 P. (2d) 764.

Whether the infirmity might possibly have resulted in eventual disability or death, even without the injury, is immaterial upon the question of the department's liability under the workmen's compensation act. *Smith v. Department of Labor & Industries,* 179 Wash. 501, 38 P. (2d) 212. Nor does it matter that the injury might not have produced the same effect in the case of a man in normal health. *Daugherty v. Department of Labor & Industries,* 188 Wash. 626, 63 P. (2d) 434. The benefits of workmen's compensation are not limited to those who are in perfect health at the time they receive their injuries. *Frandila v. Department of Labor & Industries,* 137 Wash. 530, 243 Pac. 5.

Whether a given disability is the result of injury or solely of a pre-existing infirmity, is normally a question of fact. *Brittain v. Department of Labor & Industries,* 178 Wash. 499, 35 P. (2d) 49. Therefore, in the ordinary case, it is properly a matter for the resolution of the jury. In the present instance, however, appellant contends that there is not sufficient evidence from which the jury could conclude that the schizophrenic condition from which respondent now suffers could possibly have been brought about by the incident in the tank car, whatever its exact nature may have been. Accordingly, it is appellant's position that the trial court erred in submitting the matter to the jury at all, or,

in any event, in failing to grant its motion for judgment notwithstanding the verdict.

Schizophrenia has been defined as "dementia praecox or adolescent insanity, an affection marked by melancholia and self-absorption, terminating in mental weakness." Maloy, Medical Dictionary for Lawyers. Its initial cause is not known. Concerning the circumstances which may bring on an exacerbation, or lighting up of the disease, there appears to be some little dispute. Appellant has referred us to one authority who has the following to say on the point:

"External trauma, either physical or chemical, appears to play no part either in origin or exacerbation. Mental shock seems to be important. . . . Physical shock is not an exciting cause. After injury, the intellect is more likely to be sharpened. The introvert is forced out of himself by the accident, becomes rudely awakened to life about him, and for a time at least his tendency to withdraw from society is more likely to be lessened. Shock as an exciting cause must be prolonged in character, gradually breaking down the diseased brain. Physical shock is of short duration, unable to so do, while mental shock continues through the patient's review of his troubles, hour after hour, day after day, and month after month. Thus the difficulty in adjustment to outside life, as in puberty, the menopause, through marital conflict, and money, clearly is found to be a potent factor, whereas the shock of an accident or injury is not operative." I Gray, Attorneys' Textbook of Medicine (3d ed.), pp. 1010-1013, § 98.03 (1949).

This would seem to support appellant's theory that what occurred in the tank car, no matter how physically shocking, could not have brought about a recrudescence of respondent's schizophrenia. But the doctors who testified at the hearing did not take this view of the matter. Dr. Southcombe, who was the most careful, testified, in response to a hypothetical question setting forth the circumstances under which respondent's injury occurred, and propounding an inquiry as to whether this injury could have been responsible for respondent's mental condition, as follows:

"A. Our conception of schizophrenia is that it's essentially

a chronic disability. And the factors which may precipitate an episode are exceedingly variable; and in reply directly to that question, Mr. Powell, I would say that it is possible that that series of circumstances could re-precipitate a schizophrenic episode. The probability is rather difficult to estimate, . . . I think it is not highly probable that they did precipitate a recurrence. Q. You say it is not? A. It is not highly probable."

Dr. Howells, however, in response to a similar hypothetical question, made the following statement:

"A. Well, I think that this caused the present condition, the accident caused the present condition. . . . in '44 he was entirely recovered from under treatment and he remained in that recovered state and was working normally, paid a normal wage and continuously up to the time of going into this tank car. What happened in the tank car I don't know except that he was overcome and he was burned and his temperature was raised to a high degree of 106 and his blood pressure was very low, showing there was a great deal of shock. He regained—he was unconscious and the effect of that injury shocked his nervous system so that it brought on a recurrence of the former condition that he had."

Dr. Lewis, who had been the respondent's physician, took somewhat of a middle ground. He testified as follows:

"A. I thought this injury was a precipitating factor in the recurrence of his former illness. We don't know the cause of this mental condition. We theorize on many possible factors and causes, but I think that this injury was one factor or precipitating element in his becoming ill again. Q. In other words, if he hadn't had this accident do you think he would have had the attack at the time he did? A. I have no reason to expect that he would become mentally ill again at that particular time. I think it was a possibility that he might have become mentally ill again some time in the future. . . . Q. *But the fact that it did come at this time you attribute to this heat stroke occurrence? A. I did, yes.* . . . *The fact that he did become mentally ill again following this injury makes me think that that was the trigger, if you will, that set it off.*" (Italics ours.)

It is true that we have held in a number of cases that, in

order for a claimant to recover under the terms of the workmen's compensation act, he must establish a causal connection between an industrial injury and a subsequent physical condition with at least some degree of probability. *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries,* 26 Wn. (2d) 233, 173 P. (2d) 786, and cases there cited. Where the testimony goes no further than to indicate that the injury might have caused the condition, that is insufficient. *Anton v. Chicago, M. & St. P. R. Co.,* 92 Wash. 305, 159 Pac. 115. There must be some evidence of probative value that removes the question of causal relation from the field of speculation and surmise. *Boyer v. Department of Labor & Industries,* 160 Wash. 557, 295 Pac. 737.

On the other hand, it is equally well settled that, where a court, in an industrial insurance appeal, is passing upon the sufficiency of the evidence, it must apply the rule that, if this evidence offers room for a difference of opinion in the minds of reasonable men, then the case must be presented to the jury. *Nelson v. Department of Labor & Industries,* 9 Wn. (2d) 621, 115 P. (2d) 1014; *Husa v. Department of Labor & Industries,* 20 Wn. (2d) 114, 146 P. (2d) 191.

In the present instance, it is true that Dr. Southcombe believed that there was only a possibility that the injury in the tank car might have caused a recurrence of respondent's schizophrenia. It has generally been held that this sort of testimony, standing alone, is insufficient to establish the necessary causal relation between injury and disability. See annotation, 135 A. L. R. 516. Dr. Lewis, however, was distinctly of the opinion that the accident was a precipitating factor in bringing the schizophrenia about; while Dr. Howells went so far as to state that he thought that the injury caused respondent's condition. It would seem that the jury had a right to accept this evidence. *Hepner v. Department of Labor & Industries,* 141 Wash. 55, 250 Pac. 461.

In our view, the situation is quite similar to that before the court in *Husa v. Department of Labor & Industries,*

*supra.* There, the claimant had for many years suffered from a mild schizophrenia, causing him to have certain delusions, but interfering in no way with his work, which the evidence indicated he performed adequately. While working in a logging camp, he sustained a severe fall, and afterwards was unable do any work, although it did not appear that he was physically disabled. A physician who examined the claimant stated that he was suffering from a traumatic neurosis, a state of mind in which his symptoms, though unaccountable from a physical point of view, were completely real to him; and the doctor also gave it as his opinion that this condition was caused by the fall. In view of this evidence, despite claimant's history of schizophrenia, we held that the jury could find that the disability was the result of injuries brought about by the fall, and accordingly that the trial court did not err in permitting it to pass on the matter.

In so holding, we relied largely upon *Holler v. W. S. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. (2d) 846, 148 A. L. R. 1131, a workmen's compensation case whose facts were even more analogous to those of the case at bar. There, the claimant had suffered from schizophrenia to such a degree that he had previously been confined in a mental institution. While working for defendant manufacturing company, he slipped and fell, and later suffered a recurrence of his former disorder. On the basis of medical testimony, strikingly resembling that presented in the instant case, the court held that there was sufficient evidence from which the trial court could have concluded that the injury caused the recurrence of schizophrenia. Accordingly, it affirmed a judgment in claimant's favor.

The reasoning of these cases controls here. We are of the opinion that the matter was properly submitted to the jury and that, in consequence, the judgment based upon its decision should be affirmed. It is so ordered.

BEALS, MALLERY, GRADY, and HAMLEY, JJ., concur.