[No. 2653–2.   Division Two.   November 9, 1977.]

EDWIN W. WENDT, *Appellant,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent.*

*Eugene Arron,* for appellant.

*Slade Gorton, Attorney General,* and *James S. Kallmer, Assistant,* for respondent.

REED, J.—Edwin W. Wendt sustained an industrial injury on April 28, 1968, while in the course of his employment with Weyerhaeuser Company. His claim to the Department of Labor and Industries was closed on April 22, 1970, with a finding of permanent partial disability rated at 40 percent loss of function of the right arm and 25 percent of the maximum allowable for unspecified disabilities. On April 13, 1972, he applied to reopen his claim, urging that he was now permanently and totally disabled as a result of an aggravation of his condition. The Department's refusal to reopen his claim was sustained by the Board of Industrial Insurance Appeals on November 27, 1972, and, after a de novo review, a superior court jury affirmed the Board. Wendt appeals and we reverse and remand.

The assignments of error are all directed either to the giving or refusing to give certain instructions to the jury. Several of these assignments are well taken and we will discuss them in the order of their importance.

Following trial the jury was furnished with a verdict form containing two special interrogatories, the first reading as follows:

INTERROGATORY No. 1:
Was the Board of Industrial Insurance Appeals correct in finding that between April 22, 1970 and November 27,

1972, the plaintiff's physical conditions due to his industrial injury of April 26, 1968, did not worsen and become more disabling in any degree?

The jury answered this interrogatory in the affirmative; it was therefore unnecessary for them to answer the second interrogatory, which asked if the claimant's present disability was total and permanent.

■ Wendt's major contention on appeal is that he was entitled to an instruction based upon the so–called "lighting up" theory, which has been approved by our Washington courts. *Harbor Plywood Corp. v. Department of Labor & Indus.,* 48 Wn.2d 553, 295 P.2d 310 (1956); *Jacobson v. Department of Labor & Indus.,* 37 Wn.2d 444, 224 P.2d 338 (1950); *Miller v. Department of Labor & Indus.,* 200 Wash. 674, 94 P.2d 764 (1939) and the many cases cited therein. These cases have consistently held that such an instruction should be given where there is substantial evidence to support it. To this end Wendt proposed and was refused the following instruction.

You are instructed that if an injury lights up or makes active a latent or quiescent infirmity or weakened condition, whether congenital or developmental, then the resulting disability is to be attributed to the injury and not to the preexisting condition. Under such circumstances, if the accident or injury complained of is a proximate cause of the disability for which compensation or benefits is sought, then the previous physical condition of the workman is immaterial and recovery may be received for the full disability, independent of any preexisting or congenital weakness.

Our review of the record leads us to conclude there was substantial evidence to support the giving of such an instruction in this case and that it was prejudicial error not to do so. Mr. Wendt, his wife and a family friend all testified that the claimant suffered increased pain, muscle spasms and limitation of motion between the terminal dates; in addition, he had medical support for his position. Dr. J. Harold Brown, a general practitioner specializing in

the care and treatment of industrial injuries and conditions, stated:

The problems directly referrable to the industrial injury in the majority affect the right upper extremity and right chest and spine. He did have pre–existing disability involving the left shoulder, and of course, I cannot evaluate what role the industrial injury had upon this left shoulder except by his history of increased symptoms. One must recognize that this pre–existed the industrial injury with which we are concerned today. However, he did have an injury to the right upper extremity which included a rupture presumptively of the long head of the biceps or of the biceps muscle and an injury also to the right elbow. The residual effects of this injury to the right upper extremity have been described in physical findings. Presumptively, too, he had either a rib fracture or several rib fractures. At any rate, those rib fractures have healed without offset and without demonstrable bony change insofar as alignment is concerned. The injury to the posterior chest however was one which created not only rib fractures but also the initiation of symptoms which have created spasms and pain since that time. I believe that these symptoms refer to the hypertrophic osteoarthritis which is seen in the mid and low back and that this was not caused by the industrial injury. *These changes pre–existed the industrial injury but have come into symptomatic being through the trauma which the industrial injury visited upon these pre–existing but asymptomatic areas.* Additionally and not related to the industrial injury, there is demonstrated either a mental or cerebral vascular problem. He could not classify it in either way as being symptomatic by virtue of irritability, forgetfulness, confusion; this again by emphasis does not seem to have relationship to the industrial injury and would seem to have been in its beginning at least prior to the industrial injury. Additionally, there is a pulmonary problem of chronic intensity which would not seem to be related to the industrial injury. The diagnosis of his pulmonary area problem is in doubt as far as I am concerned. The pulmonary area problem either represents a bronchiatic palpatic, a chronic estasis, or chronic bronchitis.

. . .

*As a result of the injury* to the right upper extremity and right posterior chest, mid and low back, in the 1968 injury *superimposed upon prior unrelated disabilities involving the left shoulder, the lungs, the mid and low back* at least radiographically *and perhaps mentally or in a cerebral vascular sense,* I feel that he is totally and permanently disabled and unable to return to his occupation.

(Italics ours.)

Dr. Brown's findings and conclusions were based upon two physical examinations of the claimant conducted by him on April 11, 1970, and August 10, 1972, and upon X rays taken in 1969 by Dr. Chambers, the Department's witness. In addition, both Drs. Brown and Chambers found objective evidence of a flattened lumbar curve in 1972, a condition which was not present when Dr. Chambers examined the claimant in 1969. Dr. Chambers also agreed that the claimant exhibited a stiffer back in 1972 than he did in 1969, and that current X rays displayed marked arthritic changes in his lower back, possibly accounting for the increased stiffness as well as his complaints of disabling pain. Although the Department's doctors sharply disputed Dr. Brown's findings and attributed the claimant's disability solely to his chronic progressive arthritis, his left arm problems, his cerebral vascular problems, his pulmonary difficulties and other conditions completely unrelated to the injury, these differences of opinion merely served to create issues of fact for ultimate resolution by the jury. *Jacobson v. Department of Labor & Indus., supra.*

Based upon this evidence, the jury could have found the 1968 injury lighted up or made symptomatic the preexisting and previously quiescent or asymptomatic arthritic condition. They could then further have found that this condition rendered the claimant more disabled than he had been when his claim was closed in April 1970. The jury would then have answered interrogatory No. 1 in the negative and, upon proper instructions, could have assessed the extent of that disability, *i.e.,* whether or not it was total

and permanent, when considered in combination with the claimant's other infirmities.

■ The Department argues, however, that the error did not prejudice Wendt because the court's other instructions (7, 9 and 10)[1] permitted him to adequately present and argue his theory to the jury. *Nelson v. Mueller,* 85 Wn.2d 234, 533 P.2d 383 (1975). We disagree. Such general or stock instructions might suffice were a less technical proposition involved. Here, however, a jury of lay persons might well consider the "lighting up" theory esoteric, to say the least. In such a case the law should be explicated by the judge in particular terms to insure that the jury grasps its subtleties. Finally, far from involving a mere fringe or subordinate issue, the requested instruction embodied the gist or substance of Wendt's claim. When such a key issue is involved, a correctly worded and particularized instruction should be given, and general instructions such as the court gave here will not suffice. *Kiemele v. Bryan,* 3 Wn. App. 449, 476 P.2d 141 (1970); *Lidel v. Kelly,* 52 Wn.2d 238, 324 P.2d 817 (1958); *DeKoning v. Williams,* 47 Wn.2d 139, 286

---

[1]These instructions read as follows:

Instruction No. 7:

"The plaintiff is entitled to compensation only for disability proximately caused by the industrial injury of April 26, 1968.

"The term 'proximate cause' means a cause which in a direct sequence, unbroken by any new independent cause, produces the disability complained of and without which such disability would not have happened. There may be one or more proximate causes of disability."

Instruction No. 9:

"You are instructed that where a workman is injured by an industrial accident protected by the Workmen's Compensation Act of this state, he is entitled to be compensated for all of the disability which proximately results, either directly or indirectly, from his industrial injury either to the same part or some other part of the body."

Instruction No. 10:

"The Workmen's Compensation Act of this state applies to all persons engaged in extrahazardous employment, regardless of their age or the previous condition of their health.

"In determining the effect of an industrial accident upon a workman, such effect must always be determined with reference to the particular workman involved, rather than what effect, if any, such an accident would have had, if any, upon some other person."

P.2d 694 (1955). We think this is particularly true in workmen's compensation cases where the court is required to give a liberal interpretation of the act in favor of the workman. *Gaines v. Department of Labor & Indus.*, 1 Wn. App. 547, 463 P.2d 269 (1969); *Wilber v. Department of Labor & Indus.*, 61 Wn.2d 439, 378 P.2d 684 (1963); *Hastings v. Department of Labor & Indus.*, 24 Wn.2d 1, 163 P.2d 142 (1945).[2]

■ Having determined that a new trial is necessary, we will nevertheless discuss Wendt's other assignments of error, with a view to avoiding instructional errors upon a retrial. Wendt's next contention is that the court's instruction No. 8 defining "permanent total disability"[3] was improper because it did not encompass the "special work" or "odd job" doctrine. *See Allen v. Department of Labor & Indus.*, 16 Wn. App. 692, 559 P.2d 572 (1977); *Buell v. Aetna Cas. & Sur. Co.*, 14 Wn. App. 742, 544 P.2d 759 (1976); *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 499 P.2d 255 (1972); *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942). We agree because, from the medical opinions presented, a jury might believe that on November 27, 1972, Wendt "could perform light sedentary work" or "could engage in light activity," even though he may be unable to return to his

---

[2]While we believe Wendt's proposed instruction No. 5 was sufficient to call the court's attention to his theory of the case, we do not necessarily approve of the precise wording of that instruction. Upon a retrial, instructions on the "lighting up" theory should be drawn so as to clearly and concisely present the law and Wendt's theory of the case to the jury. *See Jacobson v. Department of Labor & Indus.*, 37 Wn.2d 444, 224 P.2d 338 (1950) and cases cited therein.

[3]Instruction No. 8 (WPI 155.07) reads as follows:

"Permanent total disability is an impairment of mind or body which renders a workman unable to perform a gainful occupation.

"Total disability is the loss of all reasonable wage earning capacity. A workman is not totally disabled solely because he cannot return to his former occupation, but is totally disabled if he cannot perform regular employment within the range of his capacities, training and educational experience with a reasonable degree of success and continuity.

"Total disability is permanent when it is reasonably certain to continue without a lessening of the disability."

former employment as a carpenter–millwright. Without a "special work" instruction the jury might further believe such work is available to him on a regular basis, thus rendering him less than totally disabled, even though the Department does not carry its burden of showing the availability of such work. *Fochtman v. Department of Labor & Indus., supra.* Upon a retrial of this matter, the court's instruction on total disability should include the following:

If, as a result of an industrial injury, a workman is able to perform only special work not generally available, then he is totally disabled, unless you find that some special kind of work which he can perform is, nevertheless, available to him on a reasonably continuous basis.

*Allen v. Department of Labor & Indus., supra* at 693–94.

The claimant next assigns error to the trial court's refusal to give the following instructions:

Proposed instruction No. 12:
When a workman is unable to perform reasonably obtainable work suitable to his qualifications and training he is said to be totally disabled. When a *significantly contributing cause* of that inability is an industrial injury, the workman is entitled to receive total disability benefits under the Workmen's Compensation Act regardless of the fact that other circumstances and conditions may also be considered contributing causes of that inability.

(Italics ours.)

Proposed instruction No. 14:
The fact that a workman may be considered totally disabled due to conditions unrelated to his industrial injury will not deny him total disability benefits under the Workmen's Compensation Act *as long as the industrial injury is a proximate cause of his total disability.*

(Italics ours.)

■ Wendt argues that he was entitled to these instructions under the rule enunciated in *Shea v. Department of Labor & Indus.,* 12 Wn. App. 410, 529 P.2d 1131 (1974). In

*Shea* it was held that if a workman's industrial injury, *considered separate and apart from his other bodily conditions,* renders him *totally disabled,* then he is entitled to total disability compensation, even though he may also be totally disabled solely as a result of a condition not related to his injury. We do not agree that the *Shea* decision supports the giving of these instructions. Proposed instruction No. 12 simply lifts language from the *Shea* opinion at page 415; this language was intended only as an explanation for the holding therein and not for use as an instruction; to employ it in such a manner would only tend to confuse the jury on the terms "proximate cause" and "contributing cause." Proposed instruction No. 14 was also inappropriate because, while there was evidence from the Department's doctors that Wendt was totally disabled solely because of conditions not causally related to his industrial injury (left arm injury, cerebral vascular, and pulmonary deficiencies), there was *no evidence whatsoever* that he was totally disabled because of his industrial injury alone. On the contrary, as Wendt has so vigorously urged, his own medical evidence was designed to prove that his total disability was caused by his lighted–up preexisting arthritic condition superimposed on his noninjury–caused conditions. Therefore, the *Shea* doctrine was not applicable and the trial court correctly refused the proposed instructions.

▮ We do think, however, that Wendt was entitled to an appropriate instruction on the theory he may have been attempting to present in his proposed instructions Nos. 12 and 14, *supra, i.e.,* that his total permanent disability is compensable as such even though it results from the combined effects of his industrial injury (lighted–up arthritis) and other, completely unrelated disabling conditions. *Hurwitz v. Department of Labor & Indus.,* 38 Wn.2d 332, 229 P.2d 505 (1951); *Clayton v. Department of Labor & Indus.,* 36 Wn.2d 325, 217 P.2d 783 (1950). In actuality, the "multiple proximate cause" theory is but another way of stating the fundamental principle that, for disability assessment purposes, a workman is to be taken as he is,

with all his preexisting frailties and bodily infirmities. *Shea v. Department of Labor & Indus., supra; Fochtman v. Department of Labor & Indus., supra.* If, in fact, an industrial injury is a *proximate cause* of a disability, it matters not that such an injury would not have disabled another workman in the same degree because the latter previously enjoyed perfect health. In the instant case, in addition to the testimony of Dr. Brown which we have already alluded to, Wendt offered his attending physician, Dr. Whiteneck, who testified as follows regarding causation:

Q. What is your opinion, Doctor, based upon your overall experience with this man as to whether say, between January 1970, when you had seen him, and November of 1972, when you saw him, whether this man's condition from his industrial injury had gotten worse or not?

A. I felt he had gotten worse, yes.

Q. In your opinion, Doctor, say, in November of 1972, was this man able to work?

A. No.

Q. Was this injury he had in 1968 a factor or a cause of his being unable to work?

A. Yes.

Q. What other factors were involved in your opinion in his inability to work?

A. Really, there were two that were most important: the first was the left arm, which had been injured many years before. The left shoulder which had been injured many years before. And the second thing was this increasing amount of dependence, the chronic brain syndrome developing, which I called it, which isn't very specific; and I think that means—most of the time this thing means cerebral vascular insufficiency. So I have stated it that way.

Despite the faults we have found with Wendt's proposed instructions Nos. 12 and 14, *supra,* we think his theory of multiple proximate cause could have been adequately argued to the jury if the trial court had accepted his proposed instruction No. 7 which reads as follows:

The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent

cause, produces the disability complained of and without which such disability would not have happened.

There may be one or more proximate causes of a disability.

A workman is entitled to benefits under the Industrial Insurance Act if his injury is a proximate cause of the alleged disability for which benefits are sought. The law does not require that the injury be the sole proximate cause of such disability.

We hold it was error not to give the requested instruction; the error was compounded by the giving of court's instruction No. 7, to which Wendt also assigns error, and which reads as follows:

The plaintiff is entitled to compensation *only* for disability proximately caused by the industrial injury of April 26, 1968.

The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the disability complained of and without which such disability would not have happened. There may be one or more proximate causes of a disability.

(Italics ours.)

This instruction should not have been given because the first sentence could have led the jury to believe that the industrial injury must be the sole proximate cause of disability. Even with the addition of its second paragraph (WPI 155.06) the instruction fails to explain adequately the law of multiple proximate causes. On a retrial an appropriate instruction on this theory should be given, such as Wendt's proposed instruction No. 7. *Hurwitz v. Department of Labor & Indus., supra; Clayton v. Department of Labor & Indus., supra.*

Wendt has next assigned error to court's instruction No. 12 reading as follows:

The questions regarding whether plaintiff's condition became aggravated, regarding the extent of permanent disability, if any, and proximate cause, must be established by medical testimony.

To prove any of these facts a physician cannot rely solely on what the plaintiff tells him, in other words, subjective complaints. The physician must base his opinion regarding these questions, at least in part, on objective medical findings.

Statements of complaints by the workman made to a physician are called subjective complaints. Findings of disability which can be seen, felt, or measured by an examining physician are called objective findings.

This instruction appears to have been adopted without substantial change from *Parks v. Department of Labor & Indus.*, 46 Wn.2d 895, 286 P.2d 104 (1955) where it is strongly criticized as not being a clear statement of the law. The instruction is misleading in its use of the words "if any" when referring to Wendt's permanent partial disability because that fact had been finally determined in 1968 and was therefore res judicata. *Dinnis v. Department of Labor & Indus.*, 67 Wn.2d 654, 409 P.2d 477 (1965). In addition, the instruction appears to confuse burdens of proof by suggesting that the burden is upon the physician rather than the claimant. Even though we do not find the giving of this instruction to have been error when it is considered with other instructions given by the trial court, upon a retrial a more appropriate instruction should be given. *See* WPI 155.09 and 155.12.

Finally, the claimant contends the trial court erred when it rephrased Board finding No. 4 in apparent contravention of RCW 51.52.115, which provides in part:

Where the court submits a case to the jury, the court shall by instruction advise the jury of the exact findings of the board on each material issue before the court.

We find no prejudicial error because the trial judge's rewording did not change the ultimate fact–finding; he merely excised evidentiary commentary. Such a procedure is proper under *Stratton v. Department of Labor & Indus.*, 1 Wn. App. 77, 459 P.2d 651 (1969) and *Gaines v. Department of Labor & Indus., supra.*

686

Reversed and remanded.

PEARSON, C.J., and PETRIE, J., concur.