

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ALGANESH MASHO, | ) | No. 69654-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRISTA MINISTRIES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 9, 2013 |
| | ) | |

VERELLEN, J. — In this industrial insurance appeal, the superior court determined that Alganesh Masho's ongoing physical and psychological conditions were proximately caused by her industrial injury. Masho's employer appeals, contending Masho's medical experts did not give sufficient explanation to support their conclusion that on a more probable than not basis, her conditions were caused by her industrial injury. Because Masho's experts based their conclusions on thorough clinical examinations, detailed review of Masho's medical records and a review of related medical literature, we affirm the superior court.

## FACTS

Alganesh Masho began working as a certified nursing assistant at Crista Ministries on June 30, 2005. On October 20, 2007, she transferred a patient from a wheelchair into a bed and felt a sharp pop in her neck and shoulder area. The following

day, she was treated at the Northwest Hospital emergency room. The diagnosis of her injury was a sternoclavicular dislocation.

Masho returned to work on October 22, 2007, and worked until November 2008, when the pain in her neck and shoulder region prevented her from returning to work. Her primary attending physician for the industrial claim was Dr. Jackson. Dr. Jackson released her to full-time nurse assistant work as of November 3, 2007, just days after the dislocation. Dr. Jackson saw Masho through December 3, 2008. She returned to Dr. Jackson a few times during that period complaining of continuing symptoms.

Masho filed her application for benefits with the Department of Labor and Industries (Department) on October 30, 2007. On December 12, 2008, the Department allowed the claim. On November 9, 2009, the Department closed the claim with time-loss compensation as paid through February 16, 2009.

Masho protested the November 9, 2009 closing order on January 4, 2010. The Department affirmed its initial closing order in March 2010. Shortly thereafter, Masho again protested the March 2010 closing order, and on July 1, 2010, the Department again affirmed its initial closing orders. Masho petitioned for review before the Board of Industrial Insurance Appeal (Board) on August 24, 2010. She sought to keep her claim open for proper and necessary medical treatment, including her alleged mental health condition, as well as for time loss compensation for the period of February 17, 2009 through July 1, 2010.

Industrial Appeals Judge David Crossland heard testimony and issued a proposed decision and order on August 22, 2011. The proposed decision and order affirmed the Department's closing of Masho's claim with time-loss compensation as paid

through February 16, 2009, and affirmed the Department's denial of permanent partial disability.

On October, 3, 2011, Masho filed a petition for review before the Board, challenging the proposed decision and order. She requested that the Board authorize treatment for her physical conditions and her depression, and award time-loss benefits. The Board denied Masho's petition for review under RCW 51.52.106, and the proposed decision and order of the judge became the decision and order of the Board.

Masho appealed to superior court. The parties stipulated that the superior court would hear opening statements and closing arguments, read the verbatim transcript of proceedings, and consider the exhibits presented before the Board. The court reversed the decision of the Board.

The superior court entered findings of fact and conclusions of law on November 5, 2012. The court noted that Masho's burden of proof was to show, by a preponderance of the evidence, that the decision of the Board was incorrect. She challenged the findings "that she was not entitled to time loss compensation after February 17, 2009, and that she had no mental health condition which was proximately caused or aggravated by her October 20, 2007, industrial injury."[1] The court entered findings detailing the medical testimony that Masho's physical ailments were proximately caused by the initial industrial injury, and the court found credible the testimony that Masho's depression was a proximate result of the industrial injury. The court concluded that Masho met her burden of proof. On December 26, 2010, in

---

[1] Clerk's Papers at 13.

3

response to a CR 60 motion by Masho, the court entered more detailed findings of fact and conclusions of law.

Crista Ministries now appeals the superior court's decision on both substantive and procedural issues.

## DISCUSSION

We review the superior court's order by analyzing whether "'substantial evidence supports the trial court's factual findings,'" and we review de novo "'whether the trial court's conclusions of law flow from the findings.'"[2] Substantial evidence is evidence in a "'sufficient quantum to persuade a fair minded person of the truth of the declared premise.'"[3] We view the record in the light most favorable to the party who prevailed in superior court.[4] The Industrial Insurance Act, Chapter 51.52 RCW, provides that "[a]ppeal shall lie from the judgment of the superior court as in other civil cases."[5]

---

[2] Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (quoting Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006)). Superior court review of the Board's decision is de novo. Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999). The superior court may substitute its own findings and decision for the Board's only if the court finds from a preponderance of credible evidence that the Board's decision is incorrect. Id.

[3] Garrett Freightlines, Inc. v. Dep't of Labor & Indus., 45 Wn. App. 335, 340, 725 P.2d 463 (1986) (quoting Nichols Hills Bank v. McCool, 104 Wn.2d 78, 82, 701 P.2d 1114 (1985)).

[4] Rogers, 151 Wn. App. at 180.

[5] RCW 51.52.140. RCW 51.52.115 sets forth the judicial review provision specific to superior court: "Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110 . . . . In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed

*Sufficiency of the Evidence on Medical Causation*

A claimant is entitled to disability benefits if an industrial injury is the proximate cause of a subsequent condition.[6] To establish Masho's subsequent conditions were proximately caused by her initial undisputed industrial injury,[7] testimony must show a causal relationship on a more probable than not basis.[8] Crista Ministries argues that Masho's experts did not present sufficient evidence to connect the alleged conditions and need for treatment with the undisputed industrial injury, but instead merely stated the conclusion that Masho's conditions were connected. Crista Ministries' argument fails for three reasons.

First, Crista Ministries relies heavily upon Eastwood v. Department of Labor & Industries[9] for the proposition that it is insufficient for an expert to simply state a condition is related to an industrial injury. But Eastwood was an aggravation claim, where the plaintiff had to show "a medical opinion that reflects an actual comparison to the baseline condition at the time of the first terminal date, that is based . . . on objective

---

the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified. In case of a modification or reversal the superior court shall refer the same to the department with an order directing it to proceed in accordance with the findings of the court."

[6] Wendt v. Dep't of Labor & Indus., 18 Wn. App. 674, 684, 571 P.2d 229 (1977).

[7] Crista Ministries does not dispute the initial sternoclavicular dislocation was an industrial injury.

[8] Jenkins v. Weyerhauser Co., 143 Wn. App. 246, 254, 177 P.3d 180 (2008) (the cause-in-fact element of proximate cause concerns "but for" causation, i.e., events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred); Grimes v. Lakeside, 78 Wn. App. 554, 561-62, 897 P.2d 431 (1995) ("For a claimant to prove causation, the testimony of medical experts 'must establish that it is more probable than not that the industrial injury caused the subsequent disability.'") (quoting Zipp v. Seattle Sch. Dist. No. 1, 36 Wn. App. 598, 601, 676 P.2d 538 (1984)).

[9] 152 Wn. App. 652, 661, 219 P.3d 711 (2009).

medical findings."[10] The phrase in Eastwood that more is required than "'a physician's subjective certitude based on nothing more than vague assurances he was familiar with the patient'" must be read in conjunction with first part of that same sentence which acknowledges that an aggravation claim requires a comparison of quantifiable or objective findings.[11] But unlike Eastwood, Masho's claim was initiated as a protest of the initial closing order, not an aggravation claim. Crista Ministries argues that Eastwood's articulation of the principles of proximate cause for industrial injury claims applies to both Masho's claim and to an aggravation claim. Eastwood does not stand for the proposition advanced by Crista Ministries. The principles of proximate cause as articulated in non-aggravation industrial injury claims are the proper ones to apply here, without resort to Eastwood.

Second, when a physician testifies that current physical problems are causally related to an industrial injury on a more probable than not basis, such evidence is generally sufficient to establish causation. Our case law does not require a doctor who has reviewed a patient's medical records, conducted a thorough clinical examination and surveyed medical literature to explain the precise mechanism of causation.[12]

---

[10] Id.

[11] Id. (quoting App. Br. at 12).

[12] See, e.g., Grimes, 78 Wn. App. at 561-62. Grimes involves uncontroverted testimony about causation, but also recognizes that the substantial evidence standard simply asks whether there is enough to persuade a fair-minded person of the truth of the declared premise and recognizes that a physician's causation testimony on a more probable than not basis satisfies that standard. We do not weigh the evidence in conducting a substantial evidence review. Rogers, 151 Wn. App. at 180-81; Wimberly v. Caravello, 136 Wn. App. 327, 339, 149 P.3d 402 (2006).

Finally, and most importantly, Crista Ministries vastly understates the record, which reflects that Masho's medical experts engaged in a detailed and careful analysis before concluding her ongoing conditions were causally related to her industrial injury.

a. Dr. James

Dr. James diagnosed Masho in 2011 with right cervical dystonia, right long thoracic nerve palsy resulting in right scapular winging, right sternoclavicular dislocation, right bicipital tendinitis and tendon tear, right adhesive capsulitis (frozen shoulder) (with underlying swelling of the acromioclavicular articulation, supraspinatus and infraspinatus tear, partial tear and continuing tendinitis), and right cervical 5, 6, and 7 sensory radiculitis of the brachial plexus. Crista Ministries disputes the trial court's finding that "all of those conditions were the result of the October 20, 2007 industrial injury."[13]

Dr. James, who is board certified in physical medicine and rehabilitation, testified about details of her thorough review of Masho's medical records, as well as the tests she conducted and the observations she made during a comprehensive clinical examination.[14] Dr. James also summarized her search of related medical literature.[15]

---

[13] Clerk's Papers at 14. Crista Ministries does not dispute the existence of the conditions or accuracy of their diagnoses.

[14] Dr. James used two tools to measure Masho's right lateral cervical dystonic posturing. She measured Masho's ability to attain neutral cervical posture and measured cervical flexion and cervical rotation. Further, Dr. James conducted palpation of the neck and shoulder, examined Masho for lumbar flexion and extension, shoulder flexion, abduction, and external and internal rotation. Dr. James conducted the push-up against the wall test to determine the presence of scapular winging, and the "Spurling's maneuver" to test compression against nerve roots exiting from the neck. She then conducted tests to measure specific muscle strength, and conducted dermatome testing to determine sensation correlating to the various cervical nerve roots. Dr. James also reviewed several diagnostic tests to complement the physical testing she did during the examination, including triple phase bone scan, MRI, and MR arthrogram.

Based upon all of this information, Dr. James arrived at her diagnosis and her conclusions regarding causation. She testified that each condition was related to the industrial injury on a more probable than not basis.

With respect to the right cervical dystonia, Dr. James testified it was more probably than not caused by the original injury because it developed after the original sternoclavicular dislocation. While other doctors opined the significant lapse of time between the original injury and the onset of the dystonia suggested it was not related, Dr. James testified unambiguously that the dystonia was related on more probable than not basis. With respect to right bicipital tendinitis and tendon tear, Dr. James testified the condition was consistent with her clinical findings and radiographic imaging, as well as temporally related.

With respect to the frozen shoulder[16] (right adhesive capsulitis) and right cervical 5, 6, and 7 sensory radiculitis of the brachial plexus, Dr. James testified "[t]he same factors [clinical exam, prior medical records, and medical literature] that I stated previously" were the basis for her opinion that these two conditions were causally related to her sternoclavicular dislocation.[17] With respect to right long thoracic nerve palsy and right scapular winging, Dr. James testified that injuries to the right long

---

[15] Dr. James reviewed the most current scientific literature for treatment of cervical dystonia.

[16] This diagnosed condition included a diagnosis of edema of the acromioclavicular articulation, as well as supraspinatus and infraspinatus tear and continuing tendinitis.

[17] Certified Appeals Board Record (CABR) at 73.

thoracic nerve are common, and more specifically, that "individuals with clavicle dislocations can frequently get long thoracic nerve palsy."[18]

Dr. James stated the diagnosed conditions were more probably than not caused by the original injury. Dr. James was subject to cross-examination by Crista Ministries' counsel. Dr. James's testimony supports the trial court's finding that Masho's conditions proximately caused by the original injury.[19]

b. Dr. Watanabe

Dr. Watanabe began treating Masho on July 9, 2010. Dr. Watanabe testified than an MRI taken in June 2010 showed tears in the supraspinatus, infraspinatus and biceps tendons, and diagnosed Masho with a right frozen shoulder. She also testified Masho was depressed. Crista Ministries assigns error to the trial court's finding summarizing Dr. Watanabe's testimony, arguing Dr. Watanabe did not present substantial evidence relating the frozen shoulder to the original industrial injury.

Dr. Watanabe testified she "presume[d]" the frozen shoulder was related on a more probable than not basis to the industrial injury.[20] While a doctor's presumption of causation is not sufficient to satisfy the more probable than not standard, Watanabe's substantive testimony is consistent with Dr. James's causation testimony. Dr. Watanabe testified that a frozen shoulder can develop over a long period of time, and

---

[18] CABR at 69.

[19] Finding of Fact 8 recounts Dr. James's testimony that Masho's medical condition was not fixed as of July 1, 2010, and that Masho had not reached maximum medical improvement by July 1, 2010. Even though Dr. James did not see Masho until January 2011, Dr. James gave this testimony based on her review of records and imaging studies from 2010. Crista Ministries has not provided argument on its assignment of error to this finding of fact.

[20] Dep. of Dr. Jill Watanabe (May 2, 2011) at 11.

that the initial injury "contributed" to the evaluation of the frozen shoulder.[21] She further testified that the initial sternoclavicular dislocation "changed her anatomy in her right shoulder."[22] Even if Dr. Watanabe did not articulate her conclusion on a more probable than not basis, the record still contains Dr. James's testimony regarding the causation of the frozen shoulder.

### c. Dr. Early

Crista Ministries also assigns error to the court's finding that Dr. Early concluded Masho's industrial injury was the proximate cause of her depression. Dr. Early diagnosed major depressive disorder and anxiety disorder, in addition to pain disorder associated with psychological factors. Dr. Early also testified that the industrial injury of October 20, 2007 was causally related on a more probable than not basis to both Masho's depressive disorder and her anxiety disorder. The basis for this conclusion was that he found no other issue in Masho's life that would be a significant contributing factor to either the anxiety or depressive disorder. Finally, Dr. Early testified Masho's psychological or psychiatric conditions were the same on July 1, 2010 (the protested closing date) as when he examined Masho in October 2010.

While Dr. Early recognized other possible sources of Masho's depression, he opined the industrial injury was the most significant source, and the superior court found "credible the diagnosis of depression as a result of the October 20, 2007 industrial injury

---

[21] Id. at 25.

[22] Id. at 24.

and recommendation for psychotherapy."[23] Because credibility determinations are for the trial court, we do not disturb the court's credibility determination on appeal.[24]

The testimony of Dr. James and Dr. Early in particular was sufficient to establish causation. We conclude that substantial evidence supports the trial court's findings of fact.

*Entitlement to Disability Benefits*

The superior court concluded Masho had not reached maximum medical improvement and that she was entitled to further medical treatment for her various physical and psychological conditions, which were proximately caused by the industrial injury. Finally, the court concluded Masho was temporarily totally disabled[25] under RCW 51.32.090 from February 17, 2009 through July 1, 2010, and was entitled to time-loss compensation for that period.[26] These conclusions flow from the court's factual findings, and Crista Ministries has not provided any basis to support a determination to the contrary.

---

[23] Clerk's Papers at 35.

[24] Bartel v. Zucktriegel, 112 Wn. App. 55, 62, 47 P.3d 581 (2002).

[25] "'Temporary total disability' is a condition that temporarily incapacitates a worker from performing any work at any gainful employment." Energy Northwest v. Hartje, 148 Wn. App. 454, 463, 199 P.3d 1043 (2009).

[26] We affirm the superior court's conclusion that Masho is entitled to "further proper and necessary medical treatment" as well as "proper and necessary mental health treatment." Clerk's Papers at 36. Therefore, any award of permanent partial disability awaits closure of Masho's claim.

*CR 60 Motion*

Masho filed a CR 60 motion requesting the court to clarify its November 5, 2012 order.[27] The court granted the CR 60 motion, adding three findings of fact and four conclusions of law in its order dated December 26, 2012.[28] Crista Ministries argues the court erred by granting Masho's CR 60[29] motion and adding findings and conclusions to its original November 5, 2012 order. Crista Ministries contends Masho should have moved for reconsideration under CR 59 instead.

Under CR 60, a court may not correct judicial errors, but it may correct clerical errors.[30] To determine whether an error corrected by a superior court is judicial or clerical, the reviewing court asks whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial.[31] If so, the error is clerical "in that

---

[27] Appellant did not designate the CR 60 briefing for inclusion in the clerk's papers. The clerk's papers only include the order granting plaintiff's CR 60 motion.

[28] The court's additional findings were: (1) that Masho needed further medical treatment; (2) that she had not reached maximum medical improvement by July 2, 2010; (3) that she had medical restrictions related to her ability to work; and (4) that from February 17, 2009 through July 1, 2010, Masho's injury prevented her from performing reasonably continuous gainful employment. The court's additional conclusions were: (1) that Masho was entitled to further medical treatment for her physical injuries and for her depression; (2) that Masho was temporarily totally disabled under RCW 51.32.090 from February 17, 2009 through July 1, 2010, and entitled to time-loss compensation for that period; and (3) that the Board erred by failing to consider an award of permanent partial disability. See Clerk's Papers at 36.

[29] CR 60(a) provides, in pertinent part, "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. CR 60(b)(11) provides, " On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . . [a]ny other reason justifying relief from the operation of the judgment."

[30] In re Presidential Estates Apartment Assocs. v. Barrett, 129 Wn.2d 320, 326 (1996).

[31] Id.

the amended judgment merely corrects language that did not correctly convey the intent of the court, or supplies language that was inadvertently omitted from the original judgment."[32] A court may not enter an amended judgment that does not find support in the trial court record.[33]

The court did not render an oral ruling or give any indication of its intent as it heard closing arguments. However, when we compare the original November 5 order with the amended December 26 order, the following finding and conclusion in the November 5 order reveal the court's intention:

> [Finding of Fact] 4. The burden of proof is on the petitioner to show, by a preponderance of the evidence, that the decision of the Board is incorrect. Petitioner challenges the findings that Ms. Masho was not entitled to time loss compensation after February 17, 2009 and that she had no mental health condition which was proximately caused or aggravated by her October 20, 2007 industrial injury.[34]

> [Conclusion of Law] 2. Having considered the arguments and evidence, the court concludes that petitioner has met that burden of proof.[35]

Crista Ministries argues the only fair reading of this finding and conclusion is that the court intended to allow treatment for the mental health conditions under the original industrial injury claim, but not more. Masho responds the court's original order plainly stated she met her burden of proof on all issues; that her physical and psychological conditions were proximately caused by the industrial injury, entitling her to further treatment and time loss.

---

[32] Id.

[33] Id.

[34] Clerk's Papers at 34.

[35] Clerk's Papers at 36.

Because the court concluded Masho met her burden of proof on the issues articulated in Finding of Fact 4, it is clear that the court's intent was to award treatment for mental health conditions as well as to award an extended period of time loss compensation. The entitlement to further time-loss compensation necessarily means Masho was continuing to suffer from work-related injuries. While the December 26, 2012 order certainly adds substantial detail to the court's decision, it does not constitute correction of a judicial error. We reject Crista Ministries' argument and hold the court had authority under CR 60(a) to amend its order to specifically award time loss and further treatment for her work-related conditions.

We affirm the trial court.

WE CONCUR: