177 P.3d 180 (2008)
John JENKINS, Respondent,
v.
WEYERHAEUSER COMPANY, Appellant.
No. 36018-7-II.
Court of Appeals of Washington, Division 2.
February 20, 2008.
*181 Craig Alan Staples, Attorney at Law, Vancouver, WA, for Appellant.
Frederick Wayne Lieb, Putnam & Lieb, Olympia, WA, John R. Wasberg, Anastasia R. Sandstrom, Attorney General's Office, Seattle, WA, for Respondent.
*182 VAN DEREN, A.C.J.
¶ 1 Weyerhaeuser Company appeals the trial court's order granting John Jenkins permanent partial disability and a monetary award based on a ratable hearing loss disability claim filed 23 years after his 1980 retirement from Weyerhaeuser, at which time he had no ratable hearing loss disability. Weyerhaeuser argues that work related noise was not the proximate cause of Jenkins's ratable hearing loss disability and, therefore, the trial court should not have awarded Jenkins a monetary award for a permanent partial disability under the Industrial Insurance Act (IIA). We vacate, reverse, and remand.

FACTS
I. Background
¶ 2 Jenkins worked for Weyerhaeuser from 1949 until 1980, when he retired at age 62.[1] Before working for Weyerhaeuser, Jenkins served in the military during World War II, and then was employed at an automobile garage and Reynolds Aluminum. Jenkins was exposed to loud noises in all these positions.
¶ 3 While working for Weyerhaeuser, Jenkins worked with the paper digesting process where employees could not carry on normal conversations because of the noise; with the lime kiln, where a fan ran constantly, causing a high frequency noise; and with the paper bleaching process, where conveyer belts and a malfunctioning steam boiler on the floor below caused loud noises. In 1970, Weyerhaeuser built a noise reduction shack in Jenkins's work area, and, thereafter, he spent about half of his work time protected by the shack. And, for all but about one week of his employment, Jenkins did not wear ear protection while working at Weyerhaeuser.
II. Hearing Loss and Disability
¶ 4 On October 11, 1972, May 12, 1977, and September 17, 1980, Weyerhaeuser performed audiograms on Jenkins's hearing. None of them showed that Jenkins had a ratable hearing loss disability[2] in either ear. The 1980 audiogram showed that Jenkins had a 95 decibel loss in his left ear and a 90 decibel loss in his' right ear.
¶ 5 In November 2002, an audiogram showed that Jenkins had a ratable hearing loss disability of 35 percent binaurally, i.e., in both ears. When Jenkins was fitted for hearing aids, he was told that he might successfully claim a ratable hearing loss disability through the Department of Labor and Industries (Department), which he did in January 2003. An audiogram conducted at that time showed that Jenkins had a hearing loss disability of 26.56 percent binaurally.
¶ 6 In August 2003, Dr. Edward Treyve examined Jenkins on Weyerhaeuser's behalf and found that Jenkins had a hearing loss disability of 27.19 percent binaurally. Dr. Richard Hodgson reviewed Jenkins's prior audiograms and medical file for Weyerhaeuser. In addition, Jenkins's medical expert, Dr. Charles Souilere, examined him in September 2004 and found that he had a 37.5 percent hearing loss disability binaurally, with a 2 percent disability for tinnitus, i.e., ringing in the ears, for a total hearing loss disability of 39.5 percent binaurally.[3]
¶ 7 All doctors agreed that Jenkins had no ratable hearing loss disability when he retired from Weyerhaeuser in 1980. They also agreed that Jenkins suffered some unratable, noise related hearing loss (NRHL) at that *183 time, and that NRHL does not progress if the person is no longer exposed to the harmful noise. In addition, they believed that Jenkins's hearing loss from 1980 to 2003 was likely due to presbycusis, i.e., age related hearing loss (ARHL), or other medical factors.
III. Procedural History
¶ 8 On September 10, 2003, the Department ruled that Weyerhaeuser had to purchase and maintain hearing aids for Jenkins. Based on the August 2003 audiogram, the Department found that Jenkins had a 27.19 percent permanent partial disability and awarded him $7,830.72 based on the 1979 schedule of benefits. Weyerhaeuser unsuccessfully requested that the Department reconsider the award. Both Weyerhaeuser and Jenkins appealed the Department's order to the BIIA, and the BIIA then consolidated the appeals.
¶ 9 Following hearing on the consolidated appeals, an Industrial Appeals Judge's (IAJ) proposed decision and order stated that the BIIA should reverse and remand the Department's award.[4] The IAJ found that "[a]s of January 23, 2004, the claimant, John F. Jenkins, suffered from permanent impairment and loss of hearing in both ears predominately due to" age-related causes, unrelated to occupational noise exposure while employed by the self-insured employer, the Weyerhaeuser Company & Subsidiaries, between 1949 and 1980." Administrative Record (AR) at 29. And the IAJ concluded, as a matter of law, that "[a]s of January 23, 2004, the claimant, John F. Jenkins, was not entitled to permanent partial disability benefits within the meaning of the IIA. AR at 30. Jenkins unsuccessfully appealed the IAJ's proposed decision and order, and the BIIA confirmed the IAJ's decision and order as its final decision.
¶ 10 Jenkins successfully appealed the BIIA's ruling to the superior court.[5] In awarding judgment to Jenkins, the trial court stated:
The aging process was neither a new or independent cause of Mr. Jenkin's [sic] hearing loss. But for his exposure to industrially harmful noise Mr. Jenkins would not have had a rateable [sic] hearing loss as of January 23, 2004. The exposure to harmful noise at work was a proximate cause of Mr. Jenkin's [sic] hearing loss and set into motion the chain of events which resulted in a need for treatment and a permanent partial disability.
CP at 101. It also found that as of January 2004, Jenkins suffered from NRHL that was proximately caused by the noise exposure at Weyerhaeuser. The trial court then concluded, as a matter of law, that Jenkins suffered from an occupation disease and was "entitled to permanent partial disability benefits equal to 31.1 percent for permanent loss of hearing and two percent for tinnitus, for a total of 33.1%."[6] CP at 102. The trial court reversed the BIIA's order and remanded to the Department to award Jenkins a 33.1 percent permanent partial disability award based on the 2002 schedule of benefits. In addition, the trial court awarded Jenkins $24,780 in attorney fees and costs.
¶ 11. Weyerhaeuser appeals.

ANALYSIS
¶ 12 Weyerhaeuser argues that the trial court erred when it found that Jenkins's *184 exposure to noise at Weyerhaeuser was a proximate cause of his ratable hearing loss disability 23 years after he retired. This case poses the issue anticipated by Boeing Co. v. Heidy, 147 Wash.2d 78, 86, 51 P.3d 793 (2002), of whether an employer is responsible for a former employee's current ratable hearing loss disability if the employee suffered some unratable hearing loss before leaving employment when the later ratable hearing loss disability results from additional nonindustrial causes.
I. Standard of Review
A. Industrial Insurance Act (IIA)
¶ 13 "The IIA is the product of a compromise between employers and workers. Under the IIA, employers accepted limited liability for claims that might not have been compensable under the common law. In exchange, workers forfeited common law remedies." Cowlitz Stud Co. v. Clevenger, 157 Wash.2d 569, 572, 141 P.3d 1 (2006) (citation omitted). RCW 51.04.010 articulates this compromise, stating that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy." In addition, we liberally construe the IIA "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. "All doubts about the meaning of the [IIA] must be resolved in favor of workers." Heidy, 147 Wash.2d at 86, 51 P.3d 793.
¶ 14 Under the IIA, the BIIA's "decision is prima facie correct . . . and a party attacking the decision must support its challenge by a preponderance of the evidence." Ruse v. Dep't of Labor & Indus., 138 Wash.2d 1, 5, 977 P.2d 570 (1999); see also RCW 51.52.115.[7] "On review, the superior court may substitute its own findings and decision for the [BIIA's] only if it finds `from a fair preponderance of credible evidence,' that the [BIIA's] findings and decision are incorrect." Ruse, 138 Wash.2d at 5, 977 P.2d 570 (internal quotation marks omitted) (quoting McClelland v. ITT Rayonier, Inc., 65 Wash.App. 386, 390, 828 P.2d 1138 (1992)).
¶ 15 If the trial court did not grant summary judgment affirming the BIIA's de cision, our "`review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" Ruse, 138 Wash.2d at 5-6, 977 P.2d 570 (quoting Young v. Dep't of Labor & Indus., 81 Wash.App. 123, 128, 913 P.2d 402 (1996)); see also Steer v. Dep't of Labor & Indus., 147 Wash.2d 702, 707, 57 P.3d 248 (2002) (when the trial court grants summary judgment, our review is the same as the trial court's); Watson v. Dep't of Labor & Indus., 133 Wash.App. 903, 909, 138 P.3d 177 (2006). Substantial evidence is evidence sufficient to persuade a fair-minded rational person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000).
B. Proximate Cause
¶ 16 "Proximate cause includes two elements: cause in fact and legal causation." Baughn v. Honda Motor Co., 107 Wash.2d 127, 142, 727 P.2d 655 (1986). "Cause in fact concerns but for causation, events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred." Hertog v. City of Seattle, 138 Wash.2d 265, 282-83, 979 P.2d 400 (1999) (internal quotation marks omitted) (quoting Taggart v. State, 118 Wash.2d 195, 226, 822 P.2d 243 (1992)). Cause in fact is usually determined by the trier of fact, but the court may determine cause in fact if reasonable minds could not differ on the interpretation of the facts. Kim v. Budget Rent A Car Systems, Inc., 143 Wash.2d 190, 203, 15 P.3d 1283 (2001). And we determine legal causation as a matter of law. Kim, 143 Wash.2d at 204, 15 P.3d 1283.
*185 II. Proximate Cause of Jenkins's Ratable Hearing Loss Disability
¶ 17 Weyerhaeuser argues that the trial court erred in concluding that the workplace noise exposure before Jenkins's retirement in 1980 was a proximate cause of any permanent partial hearing loss disability. It also argues that this case concerned only cause in fact and that Jenkins did not establish that the NRHL was the proximate cause of any ratable permanent partial disability. Weyerhaeuser relies on Heidy and argues that ARHL may be segregated from work related hearing loss in circumstances such as those present here. 147 Wash.2d at 86, 51 P.3d 793. Jenkins argues that hearing loss is additive and, but for the loss experienced while he was employed at Weyerhaeuser, he would not have experienced a ratable hearing loss disability later in life.
¶ 18 Heidy consolidated Carl Heidy and William McGraw's appeals based on their claims for hearing loss disability because of NRHL that occurred while they were employed at Boeing. Both Heidy and McGraw also suffered from ARHL. The BIIA held that Washington law forbids segregation of a worker's claim between ARHL and NRHL as a matter of law. Heidy, 147 Wash.2d at 81-82, 51 P.3d 793. The Pierce County Superior Court adopted the BIIA's conclusion in McGraw's case; and, in Heidy's case, the King County Superior Court held that segregation was forbidden under Weyerhaeuser v. Tri, 117 Wash.2d 128, 814 P.2d 629 (1991). Heidy, 147 Wash.2d at 83-84, 51 P.3d 793.
¶ 19 When the cases reached our Supreme Court,[8] it held that Tri did not control because Tri concerned apportioning risk between consecutive employers and insurers, whereas, Heidy and McGraw's case, as here, concerned "the different issue of segregating an occupational disease from a nonoccupational disease." Heidy, 147 Wash.2d at 84, 51 P.3d 793. Boeing argued that the court should apply Dr. Robert Dobie's statistical methodology to segregate ARHL from NRHL. But the court rejected this approach because Dobie's statistical methodology only "reflects the median amount of ARHL expetted by a person of that age" and does "not help triers of fact determine the actual extent of workers' individual work-related diseases." Heidy, 147 Wash.2d at 85, 51 P.3d 793.
¶ 20 The court concluded that, in individual cases, a claim may be segregated if the employer can establish that a portion of the disability is not work related, but that a worker's age and Dobie's median based method for allocating ARHL cannot be used to controvert the existence or magnitude of a worker's disability. Heidy, 147 Wash.2d at 86, 51 P.3d 793.
[We cannot find] statutory authority to support the proposition that a disabled worker's PPD [ (Permanent Partial Disability)] award can be reduced based simply on the age of the worker. While employers are not required to compensate workers' nonwork-related diseases and injuries, the fact a worker is a certain age is irrelevant to establishing that any portion of his or her injury or disease is not workrelated. If it is determined that a worker's disability is work-related and the employer can establish, on an individualized basis, that the full amount or a portion of a worker's disability is not work-related, the employer need not compensate that worker for the portion of the worker's disease or injury that is not work-related.
Heidy, 147 Wash.2d at 86, 51 P.3d 793.
¶ 21 Here, there is no question that Jenkins did not suffer a ratable hearing loss disability when he retired from Weyerhaeuser. In September 1980, the audiogram showed that Jenkins had no ratable hearing loss disability in either ear. In addition, all medical experts agreed that the damage to a person's hair cells from noise is permanent, but once a person is no longer exposed to damaging noise leyels, the NRHL will not progress. Thus, Jenkins's case is distinguishable from Heidy because the employees in Heidy sustained hearing loss from NRHL and ARHL concurrently.
¶ 22 Jenkins's case presents the scenario anticipated by the court in Heidy. The evidence *186 is robust that Jenkins suffered a sequential, not concurrent, loss of hearing. Weyerhaeuser established that Jenkins's ratable hearing loss disability did not result from his work at Weyerhaeuser and that it could be segregated from his ARHL after he retired. See Heidy, 147 Wash.2d at 86, 51 P.3d 793. It established, on an individual basis, that Jenkins's disability is not work related, and it need not compensate him for injuries that are not work related.
¶ 23 Thus, substantial evidence does not support the trial court's finding of fact that, but for Jenkins's NRHL, he would not have suffered a ratable hearing loss disability 23 years later. Because substantial evidence does not support the trial court's finding that Jenkins's NRHL is a proximate cause of his ratable hearing loss disability, the trial court's conclusions of law are unsupported and we vacate and reverse its order, and direct it to enter judgment for Weyerhaeuser.
III. Attorney Fees
¶ 24 Weyerhaeuser asks us to reverse the trial court's award of attorney fees to Jenkins or require the trial court to modify the attorney fees it assessed against Weyerhaeuser for Jenkins's appeal to the trial court. The award of attorney fees in IIA appeals is controlled by RCW 51.52.130 and "Nile statute encompasses fees in both the superior and appellate courts when both courts review the matter."[9]Hi-Way Fuel Co. v. Estate of Allyn, 128 Wash.App. 351, 363-64, 115 P.3d 1031 (2005). The statute allows the court to fix attorney fees if the court reverses the BIIA's order and grants an award to the disabled worker. RCW 51.52.130. Because we reverse the trial court's order and grant relief to Weyerhaeuser, we also reverse Jenkins's attorney fees and costs awards. See Oien v. Dep't of Labor and Indus., 74 Wash.App. 566, 571, 874 P.2d 876 (1994).
¶ 25 We vacate and reverse the trial court's judgment in favor of Jenkins and remand for proceedings consistent with this opinion.
We concur: ARMSTRONG and QUINBRINTNALL, JJ.
NOTES
[1] Jenkins was born on July 22, 1918.
[2] Washington State uses the American Medical Association's Guide to the Evaluation of Permanent Impairment (AMA Guides) to formulate ratable hearing loss disability. Hearing loss is tested at i he frequencies of 500, 1,000, 2,000, and 3,000 hertz, and an individual must have a loss of more than 100 decibels to have a ratable hearing loss disability. The AMA Guides use a formula to translate that decibel sum into a percentage of hearing loss disability. The decibel hearing loss sum is divided by four. Twenty-five (25) decibels, representing the average hearing loss a person will experience over his or her lifetime, is then subtracted from that result. Then, that total is multiplied by 1.5 to determine the percentage hearing loss disability (i.e., 200 decibel hearing loss / 4 = 50-25 = 25 x 1.5 = 37.5 percent hearing loss disability).
[3] The Board of Industrial Appeals (BHA) considered the depositions of medical doctors Edward Treyve, Richard Hodgson, and Charles Souilere.
[4] Weyerhaeuser did not challenge the Department's requirement that it pay for and maintain Jenkins's hearing aids and, thus, this portion of the Department's ruling remains in effect.
[5] Both parties moved for judgment as a matter of law. On March 22, 2006, the trial court wrote a letter to counsel on the issue of proximate cause:

Aging is a proximate cause of the claimant's loss. Aging is not a superseding intervening cause but is a consequence which is inevitable. Since there may be more than one proximate cause of an event, the fact that the industrial injury preceded the aging process does not mean that it was not a proximate cause of the hearing loss. It is the first proximate cause. Aging is the second proximate cause.
Therefore, the claimant's motion for summary judgment should be granted, and the employer's motion denied. Counsel may provide an appropriate order. Clerk's Papers (CP) at 41. But counsel did not reduce this letter ruling to an order and later submitted trial briefs on the issue.
[6] No audiogram shows that Jenkins had a hearing loss disability of 33.1 percent.
[7] RCW 51.52.115 provides in relevant part that "[i]n all court proceedings under or pursuant to this title the findings and decision of the [BIIA] shall be prima facie correct and the burden of proof shall be upon the party attacking the same."
[8] The cases were consolidated when we and Division One certified the appeals to the Washington Supreme Court. Heidy, 147 Wash.2d at 84, 51 P.3d 793.
[9] RCW 51.52.130(1) provides in relevant part: If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.