FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 9: 05

STATE OF WASHINGTON

BY No. 45305-3-II
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CLIFFORD S. DANIELS, | |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR & INDUSTRIES; AND DPWN HOLDINGS, INC. (DHL EXPRESS), | |
| Respondents. | |

BJORGEN, A.C.J. — Clifford Daniels appeals the trial court's order concluding that Daniels's self-insured employer, DPWN Holdings Inc. (DHL), was not responsible for injuries to both his knees. Daniels contends that the trial court erred in finding that a work place accident did not cause or aggravate those conditions.

We hold that substantial evidence supports the trial court's factual finding that Daniels's work place accident did not proximately cause or aggravate the injuries to both his knees. Because the trial court's findings support its conclusion that DHL was not responsible for the injuries to Daniels's knees, we affirm.

## FACTS

In 1991, Daniels began working for DHL. Daniels's job required him to deliver and receive packages. In 2007, while performing these duties, Daniels suffered two work place injuries, one to each knee.[1]

---

[1] Daniels's knee problems predate these work place injuries. While playing football in high school, Daniels suffered a right knee meniscus tear, an injury requiring surgical removal of part of the meniscus. This type of surgery is linked to the development of osteoarthritis.

In 2009, Daniels attempted to reopen his claim for workers' compensation related to the 2007 injury to both knees. An orthopedic surgeon, Allen Jackson, evaluated Daniels as part of this process. After this evaluation, Jackson diagnosed Daniels with progressive osteoarthritis in both knees. Jackson recommended that Daniels undergo bilateral knee replacements because of the advanced state of his osteoarthritis; Daniels's treating physicians concurred with Jackson's recommendation. Despite this advice, Daniels chose not to proceed with the bilateral knee replacements.

In December 2010, roughly 18 months after Jackson recommended bilateral knee replacements, Daniels experienced another work place accident. While Daniels picked up a package from a desk, a forklift smashed a heavy cart into the backs of his legs, pinning his left leg between the cart and the desk. The accident resulted in a contusion "seven [to] eight inches long" and "two inches deep" in Daniels's lower left leg and a puncture wound to his right leg. Clerk's Papers (CP) at 126. Daniels told one of the physicians treating him that he could not remember "any specific injury" to his knees during this accident. CP at 134.

Daniels never returned to work following the December 2010 work place accident. He filed a claim with the Department of Labor and Industries requesting "medical treatment and other benefits." CP at 71. The Department initially allowed his claim, but later ordered that "[t]he [self-insured employer DHL] denies responsibility for any aggravations or injury to both knees." CP at 71.

After the Department denied his motion to reconsider this order, Daniels appealed to the Board of Industrial Insurance Appeals (Board), contending that he was entitled to

> [a]llowance of the claim and corresponding benefits . . . , [f]urther treatment, time-loss compensation, or loss of earning power, [an] increased permanent partial disability award, or [a] permanent total disability award.

CP at 51, 54. The Board assigned the matter to an industrial appeals judge who presided over a hearing on the merits of Daniels's appeal.

At the hearing, Daniels testified about the December 2010 accident and his history of problems with his knees. Daniels also testified that, after the accident, he could not return to work or perform many of the activities that he had enjoyed prior to the accident.

H. Richard Johnson, an orthopedic surgeon, testified on Daniels's behalf. Johnson testified that Daniels's December 2010 accident inflicted crush wounds on Daniels's knees. Johnson found it significant that Daniels had suffered this type of injury because crush wounds cause tissue necrosis.[2] Johnson testified that this tissue necrosis, along with the need for Daniels to limit his activity after the surgery to allow the surgical repairs to heal, resulted in a permanent aggravation of preexisting flexion contractures in his knees.[3] Johnson also testified that Daniels's bilateral knee osteoarthritis had worsened after the accident. On cross-examination, however, Johnson was unable to point to anything in Daniels's treatment records that showed that the accident had inflicted crush wounds on him.

Jeffrey Friedrich, a plastic surgeon, also testified for Daniels. Friedrich treated Daniels for the contusion he suffered in the December 2010 accident. Friedrich opined that the accident had not caused Daniels's bilateral knee osteoarthritis, but had aggravated preexisting osteoarthritis in the knees. However, under cross-examination, Friedrich testified that he had not examined the numerous medical records describing the extent of Daniels's preexisting condition to his knees. Friedrich agreed that it was "difficult to assess the cause of [Daniel's] current

---

[2] As used here, tissue necrosis is the "death . . . of soft tissue." CP at 155.

[3] Flexion contractures occur "when the structures in the posterior aspect of the knee tighten up to where the patient is . . . unable to bring their knee into full extension." CP at 154.

condition" without first reading those records. CP at 215-16. Friedrich also testified, under cross-examination, that he would defer to the opinions of the orthopedic surgeons about the causes and extent of the injuries to Daniels's knees, and that he concurred with the opinions of Dr. Patrick Bays and Dr. Carter Maurer.

Maurer, an orthopedic surgeon, testified for DHL. Based on a review of Daniels's medical records and a physical examination, he testified that he diagnosed Daniels with two relevant conditions. First, Maurer diagnosed Daniels with "ongoing[,] longstanding" osteoarthritis in his knees that "predated" the December 2010 injuries. CP at 239, 242. Maurer testified that, in his opinion, the accident had not "permanently worsen[ed] [Daniels's] underlying preexisting bilateral knee arthritis." CP at 242. Maurer stated that his opinion resulted from the advanced state of Daniels's osteoarthritis in 2009. Given that Daniels already had end stage osteoarthritis before the accident, Maurer testified that the accident would not have aggravated the condition. Instead, Maurer stated that osteoarthritis is a progressive disease and that Daniels's claims that his osteoarthritis had worsened after the accident simply reflected the disease's natural progression.

Second, Maurer also diagnosed Daniels with knee flexion contractures. Maurer noted that these contractures predated the accident and opined that the accident had not caused or worsened them. In support of this opinion, Maurer noted that post-accident measurements of the flexion contractures were nearly identical to pre-accident measurements. When asked about Johnson's theory that Daniels had suffered crush injuries that aggravated his flexion contractures, Maurer testified that Daniels's treatment records did not show any evidence of crush injuries. Maurer went on to testify that, even if Daniels had experienced crush wounds to the knees, it would not have aggravated Daniels's preexisting flexion contractures because the

4

knee capsule, the tissue associated with flexion contractures, is "not injured by the mechanism of a direct contusion or a direct blow." CP at 245.

Bays, another orthopedic surgeon, also testified for DHL. Based on his examination of Daniels and review of Daniels's medical records, Bays diagnosed Daniels with bilateral "end stage chronic severe degenerative arthritis." CP at 288-89. Bays testified that, in his opinion, the arthritis was preexisting and "unaffected by" the December 2010 accident. CP at 289. Bays reasoned that

> [a]rthritis is a condition that will take many, many years to reach end stage. It would take probably 10 to 20 to 30 years for that to happen. So it would be literally physiologically impossible for any of those imaging studies showing severe end stage arthritis to have been in any way causally related to [the accident].

CP at 289. When discussing Daniels's preexisting osteoarthritis, Bays noted that Jackson had recommended bilateral total knee replacements 18 months before the December 2010 accident. Bays testified that, with Daniels's decision not to undergo this operation,

> it was predictable that over time this would continue to deteriorate. His function would become more and more compromised. His pain level would continue and ultimately he would have significant restrictions not only in the work place but also out of the work place. And it appears . . . that's exactly what's happened.

CP at 301. Like Maurer, Bays also diagnosed Daniels with flexion contractures that preexisted the accident, and he also opined that the accident had not aggravated these flexion contractures. Again, like Maurer, Bays based this opinion on the fact that measurements of the contractures taken before and after the accident were "very consistent." CP at 298. Further, like Maurer, Bays testified that the medical evidence did not support Johnson's diagnosis of crush wounds to Daniels's knees.

Jackson, the orthopedic surgeon who evaluated Daniels in 2009, also testified for DHL. Jackson testified that he diagnosed Daniels with "end stage osteoarthritis" after that evaluation. CP at 335. Jackson testified that he had reviewed Daniels's subsequent medical records and that

the December 2010 injury had not caused or aggravated Daniels's prior injuries to his knees. Jackson stated that Daniels had end stage osteoarthritis before the accident and he continued to have it afterwards. Like Maurer and Bays, Jackson noted the progressive nature of osteoarthritis and stated that any degeneration in Daniels's knees reflected a "slow worsening of his underlying [knee] condition" rather than an injury resulting from the accident. CP at 337. Like Maurer and Bays, Jackson also described measurements of Daniels's flexion contractures taken before and after the December 2010 accident and testified that, after comparing the measurements, he could not "conclude that his flexion contracture is worse." CP at 340. Finally, like Maurer and Bays, Jackson testified that no medical evidence supported Johnson's contention that Daniels had suffered crush injuries to his knees.

After hearing this testimony, the administrative law judge determined that Daniels failed to show "on a more-probable-than-not basis that" he "sustained knee injuries during his 2010 accident." CP at 47. Consequently, the judge affirmed the Department's order denying that DHL was responsible for Daniels's knee conditions. Daniels petitioned for review, but the Board denied the petition and adopted the judge's proposed decision and order as its own final decision and order.

Daniels appealed the Board's final decision and order to the superior court. After a bench trial de novo based on the record before the Board, the court found in its order of August 12, 2013 that "Clifford S. Daniels's bilateral knee conditions were not proximately caused or aggravated by the December 21, 2010 industrial injury." CP at 397[4] Consequently, the trial

---

[4] The trial court's order of August 12, 2013 made written findings and incorporated oral findings already made.

court concluded that DHL was "not responsible for any aggravation or injury to both knees." CP at 397.

Daniels now appeals the trial court's order.

## ANALYSIS

### I. STANDARD OF REVIEW

RCW 51.52.140 governs appeals for proceedings under Washington's Industrial Insurance Act, Title 51 RCW (the Act). It states that "[e]xcept as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases." RCW 51.52.140. This provision "results in a different role for the Court of Appeals than is typical for appeals of administrative decisions pursuant to, for example, the Administrative Procedure Act, where we sit in the same position as the superior court." *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (footnote omitted). Instead, our review

> is akin to our review of any other superior court trial judgment: "review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings."

*Rogers*, 151 Wn. App. at 180 (quoting *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999)).

Substantial evidence is evidence that is sufficient to persuade a fair-minded, rational person that the premise is true. *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008). During our review, we view the record in the light most favorable to DHL, the party prevailing in the trial court, and we do not "'reweigh or rebalance the competing testimony and inferences, or . . . apply anew the burden of persuasion.'" *Rogers*, 151 Wn. App. at 180-81 (quoting *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002)).

## II. Substantial Evidence

Daniels contends that the trial court erred in its finding that his December 2010 accident was not a proximate cause of his knee conditions. He claims that the accident "li[t] up" the preexisting osteoarthritis or flexion contractures in his knees, meaning that he suffered an injury within the meaning of the Act, entitling him to compensation. Br. of Appellant at 36 (citing *Miller v. Dep't of Labor & Indus.*, 200 Wash. 674, 682-83, 94 P.2d 764 (1939)). DHL, in contrast, argues that substantial evidence supports the trial court's finding that Daniels's accident did not cause or aggravate his knee conditions, and that this finding supports the trial court's affirmance of the Board's final decision and order. We agree with DHL.

Under the Act, "[e]ach worker injured in the course of his or her employment . . . shall receive compensation in accordance with" the provisions of Title 51 RCW. RCW 51.32.010. By definition, an injury "means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and *such physical conditions as result therefrom.*" RCW 51.08.100 (emphasis added). "[I]f the accident or injury . . . is the proximate cause of the disability for which compensation is sought, the previous physical condition of the work[er] is immaterial and recovery may be had for the full disability independent of any preexisting or congenital weakness . . . [because] the work[er's] prior physical condition is not deemed the cause of the injury but merely a condition upon which the real cause operated." *Tomlinson v. Puget Sound Freight Lines, Inc.*, 166 Wn.2d 105, 116-17, 206 P.3d 657 (2009) (quoting *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 471, 745 P.2d 1295 (1987), quoting and citing *Wendt v. Dep't of Labor & Indus.*, 18 Wn. App. 674, 682-83, 571 P.2d 229 (1977), *Miller v. Dep't of Labor & Indus.*, 200 Wash. 674, 682-83, 94 P.2d 764 (1939)).

Whether a condition "is the result of injury or solely of a preexisting infirmity[] is normally a question of fact." *Jacobson v. Dep't of Labor & Indus.*, 37 Wn.2d 444, 448, 224 P.2d 338 (1950); *Brittain v. Dep't of Labor & Indus.*, 178 Wash. 499, 504, 35 P.2d 49 (1934). This question of fact turns on whether the claimant would experience the condition for which he or she seeks compensation under the Act even if he or she had not experienced the work place incident. *See Jenkins*, 143 Wn. App. at 254.

Substantial evidence supports the trial court's factual finding that the December 2010 injury did not proximately cause or aggravate Daniels's osteoarthritis. Maurer, Bays, and Jackson each testified that, in their opinion, Daniels's injury in December 2010 did not cause or permanently aggravate his bilateral knee osteoarthritis.[5] Each of them stated that Daniels's osteoarthritis had reached its end stage over a year before the December 2010 incident and that any worsened osteoarthritis in Daniels's knees after the accident simply resulted from the natural progression of the disease, rather than aggravation by the incident. Indeed, Bays went so far as to testify that it was physically impossible that the December 2010 incident caused or aggravated Daniels's knee conditions, and Maurer agreed. Further, Bays specifically testified that Daniels's decision to decline bilateral knee replacement surgery before the December 2010 injury made it inevitable that Daniels would experience the kinds of work and home restrictions that he now seeks compensation for. This testimony could readily convince a fair-minded, rational individual that Daniels would experience the same osteoarthritis even if he had not experienced the

---

[5] Although Friedrich testified on direct that he believed the December 2010 injury had aggravated Daniels's bilateral knee osteoarthritis, he testified on cross that he concurred with the opinions of Maurer and Bays, and thus ultimately also testified that the incident did not aggravate Daniels's bilateral knee osteoarthritis.

December 2010 accident, meaning that the accident did not proximately cause or aggravate his osteoarthritis. *Jenkins*, 143 Wn. App. at 254.

Substantial evidence also supports the trial court's factual finding that the December 2010 accident did not proximately cause or aggravate Daniels's flexion contractures. Maurer, Bays, and Jackson all testified that the December 2010 accident did not cause or aggravate those contractures. Each noted that the flexion contractures existed before the December 2010 accident and that measurements of the contractures taken before and after the accident were consistent with each other.[6] Maurer also testified that, even assuming that Daniels had experienced the type of crush injury to the knees that Johnson believed had occurred, it would not have caused or worsened Daniels's flexion contractures.[7] This testimony could convince a fair-minded, rational person that, regardless of the December 2010 accident, Daniels would experience the same flexion contractures he now complains of, meaning that the accident did not proximately cause or aggravate his flexion contractures. *Jenkins*, 143 Wn. App. at 254.

Daniels, nevertheless, argues that the trial court erred in finding the accident did not proximately cause injury to his knees for four reasons. We review each in turn.

First, Daniels contends that we should construe the Act broadly. While true, Daniels nonetheless bears the burden of showing causation. *See Ruse*, 138 Wn.2d at 6. The Board

---

[6] The evidence about these measurements provided the trial court substantial evidence upon which to reject Daniels's theory that his convalescence aggravated his flexion contractures. According to Friedrich, Daniels could walk and bear weight on his legs in January 2011. Bays took measurements of the flexion contractures in June 2011; Maurer took measurements of the flexion contractures in October 2011. These post-accident measurements, which were comparable to pre-accident measurements, were taken after Daniels could "ambulate" effectively following his surgery related to the accident. CP at 209.

[7] Maurer, Bays, and Jackson all testified that no medical evidence supported the existence of such an injury, and Daniels himself told one of his treating physicians that he could not recall any specific injury to his knees during the accident.

determined that Daniels failed to discharge this burden, and the trial court reached the same decision after a trial de novo. Substantial evidence supports the relevant trial court finding to this effect, as noted above, and broad construction of the Act does not change that.

Second, Daniels claims that the trial court erred in affirming the Board's order because he needed only to show that the December 2010 was *a* proximate cause of the injuries to his knees, not *the* proximate cause. The Act recognizes that an injury might have more than one proximate cause. *Wendt*, 18 Wn. App. at 684. However, here the trial court found that the accident did not "proximately cause[] or aggravate[]" Daniels's bilateral knee conditions. CP at 397. This is a finding that the accident was not even *a* proximate cause of Daniels's knee conditions, and, as noted, substantial evidence supports the trial court's finding.

Third, Daniels argues that the trial court erred in failing to find that the December 2010 accident "li[t] up" his preexisting knee conditions. *Miller*, 200 Wash. at 682. Daniels maintains that he was not disabled before the accident, but was disabled afterward, and that the accident therefore had to have lit up his knee conditions. Daniels presented this argument to the trial court, and the trial court declined to make the inference Daniels sought. To the extent that Daniels argues that the trial court had to make the inference because of the evidence that he presented, he is simply incorrect.[8] The trial court, as the fact finder, was free to decline to do so based on the competing evidence offered by DHL. *See Lofthus v. Navy Yard City Mill Co.*, 121 Wash. 74, 74-75, 207 P. 953 (1922) ("[t]his presented purely a question of fact on which there was a dispute, and of which the jury was entitled to accept either the respondent's or the

---

[8] Daniels's presentation of the standard for reviewing the sufficiency of a party's evidence, which suggests that he believes that he needed only to establish a probability of a causal connection between the accident and his knee condition to succeed on his claim, indicates that he makes this argument.

11

appellant's version."). To the extent that Daniels asks us to reverse the trial court's findings by making the inference he asked of the trial court, doing so exceeds the scope of our review.[9] We do not weigh testimony or make inferences that the trial court did not make; we simply review the record for substantial evidence that supports those findings the trial court did make. *Rogers,* 151 Wn. App. at 180-81 (quoting *Harrison,* 110 Wn. App. at 485). As discussed above, substantial evidence supports the trial court's finding that the December 2010 accident did not light up Daniels's existing knee conditions.[10] Daniels's argument does not avail him.

Finally, Daniels contends for the first time in his reply brief, that the trial court erred by finding that the accident did not light up his preexisting osteoarthritis or flexion contractures because his experts testified that it did. Even if we do not consider this argument waived by Daniels's failure to present it before his reply brief, *Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992), the trial court heard Daniels's expert's testimony, along with contrary testimony from Maurer, Bays, and Jackson. The trial court resolved the competing testimony against Daniels, and we defer to that determination on review. *Rogers,* 151 Wn. App. at 180-81 (quoting *Harrison,* 110 Wn. App. at 485).

---

[9] Daniels's presentation of the error of law standard of review indicates that he makes this argument. Daniels contends that the application of the lighting up theory is a question of law and that under the error of law standard we may substitute our judgment for that of the agency. The error of law standard recognizes that the ultimate power to determine the meaning of a law belongs to the courts, not executive agencies, and it does not apply to factual matters. *See Overton v. Econ. Assistance Auth.,* 96 Wn.2d 552, 555, 637 P.2d 652 (1981). The error of law standard is inapplicable here because our review concerns factual findings made by the trial court.

[10] We also note that the lighting up theory applies to "latent or quiescent infirmity[ies] or weakened physical condition[s] occasioned by disease." *Miller,* 200 Wash. at 682. Daniels had end stage osteoarthritis and flexion contractures in both knees, and it therefore seems difficult to call his conditions latent or quiescent.

### III. ATTORNEY FEES

Daniels requests reasonable attorney fees under RCW 51.52.130, which allows for such an award where an appeal results in the reversal or modification of the superior court's order and "additional relief is granted to a worker or beneficiary." Daniels, however, has not obtained the required reversal or modification of the superior court order, let alone reversal that grants him additional relief. Therefore, he is not eligible for an award of reasonable attorney fees under RCW 51.52.130.

### CONCLUSION

The trial court's finding that the December 2010 accident did not proximately cause or aggravate Daniels's bilateral knee conditions is supported by substantial evidence in the record. The trial court's conclusion that DHL was not responsible for any aggravation or injury to Daniels's knees flows directly from that finding. Therefore, we affirm the trial court's order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Bjorgen, A.C.J._
BJORGEN, A.C.J.

We concur:

_Maxa, J._
MAXA, J.

_Melnick, J._
MELNICK, J.

13