IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JESUS OROZCO, | ) | No. 33808-8-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — Jesus Orozco appeals the superior court's decision

denying his request to reopen his 2006 industrial injury claim. In addition to other issues,

he argues the superior court erred when it found his 2006 injury did not proximately cause

his mental health conditions. Because this issue is dispositive, we do not address the

other issues he raises. We hold that substantial evidence supports the superior court's

finding, and affirm.

## FACTS

On April 25, 2006, Mr. Orozco injured his head while working for Goodwill

Industries. Mr. Orozco was loading a box into a truck when a coworker closed the truck's

overhead metal door and struck Mr. Orozco's head. The door injured Mr. Orozco's face, head, neck, and lower back. Mr. Orozco filed a workers' compensation claim. The Department of Labor & Industries (Department) allowed the claim and determined Mr. Orozco was entitled to time-loss compensation and medical treatment. While Mr. Orozco was receiving benefits, he was examined by Dr. James Haynes, a neurologist, and Dr. Lanny Snodgrass, a psychiatrist. On July 29, 2009, the Department determined treatment was no longer necessary and closed the claim.

In August 2011, Mr. Orozco filed an aggravation application to reopen his claim. On October 3, 2011, the Department denied his application on the basis that the medical condition caused by the injury had not worsened since the final claim closure. Mr. Orozco appealed the Department's order to the Board of Industrial Insurance Appeals (Board), which granted his appeal. After he appealed the Department's order, Mr. Orozco was examined by Dr. Silverio Arenas, a clinical psychologist.

At the Board hearing, Mr. Orozco and his wife both testified, and Mr. Orozco presented Dr. Arenas's deposition testimony. Dr. Arenas testified that he examined Mr. Orozco in January 2012 and in March 2012. He determined Mr. Orozco was cognitively compromised either because of pain, emotional factors, or possibly because of post-concussive syndrome, which is a collection of symptoms that affect a person after he or

2

she has suffered a concussion. He diagnosed Mr. Orozco with four mental health conditions: a cognitive disorder, anxiety disorder, pain disorder, and depressive disorder. Dr. Arenas did not believe Mr. Orozco was malingering.

Dr. Arenas further testified that Mr. Orozco did not have these conditions before his injury, and that these four conditions began in April 2006 when Mr. Orozco was injured and continued through the present. Other than the injury, Dr. Arenas did not see any other causes for the conditions. Finally, Dr. Arenas testified that Mr. Orozco's mental health conditions had worsened between the terminal dates. He believed Mr. Orozco had been deteriorating since his injury and would continue to deteriorate into the future.

The Department presented the deposition testimony of Dr. Haynes, the neurologist.[1] Dr. Haynes testified he examined Mr. Orozco in April 2009 and in September 2011. During the 2009 examination, Dr. Haynes noted that Mr. Orozco exhibited "dramatic pain behavior," which was not consistent with the residuals of any injury. Clerk's Papers (CP) at 178. Dr. Haynes did not "want to say malingering," but

---

[1] Mr. Orozco argues that this court cannot consider Dr. Haynes's testimony because his injury caused a psychiatric condition and Dr. Haynes is a neurologist. Mr. Orozco preserved this issue for review by raising it before the industrial appeals judge (IAJ), who denied his argument. For purposes of this particular appeal, we need not accord Dr. Haynes's testimony any weight.

3

called it a "performance such as you would see on a Broadway stage, as opposed to the product of any injury or disease or condition." CP at 179. Dr. Haynes questioned whether a relatively minor head injury would result in an "ever-progressing and spreading total body pain, resulting in total disability, unsupported by any neuroimaging." CP at 187.

With regard to his 2011 examination, Dr. Haynes testified that "[t]he pain was a little more extensive," and "it seemed like things were getting worse." CP at 181-82. When asked whether Mr. Orozco's conditions objectively worsened between the terminal dates, Dr. Haynes testified that they had not. When asked about Dr. Arenas's cognitive disorder diagnosis, Dr. Haynes testified that he would defer the cognitive discussion to a psychiatrist but that he did not see a neurological basis for Dr. Arenas's diagnosis. Finally, he noted there was really nothing wrong with Mr. Orozco, other than the fact that Mr. Orozco had a major psychological collapse.

The Department also presented the deposition testimony of Dr. Snodgrass, the psychiatrist. Dr. Snodgrass testified he examined Mr. Orozco in November 2007 and in April 2009. When asked whether he was able to come to a diagnosis during the 2007 examination and, if so, whether the diagnosis was related to the industrial injury, Dr. Snodgrass testified there was no major psychiatric diagnosis for Mr. Orozco. Dr.

4

Snodgrass then opined that Mr. Orozco "did not have a psychiatric condition that was causally related to the current injury on a more-probable-than-not basis, and that malingering, in accordance with a detailed examination, had to be seriously considered." CP at 223-24. He testified "there was no clear evidence of a cognitive disorder related to a closed-head injury." CP at 224.

With regard to his April 2009 examination, Dr. Snodgrass testified that he noted "[n]o significant neuropsychological residuals stemming from the industrial injury of 04/25/06." CP at 234. He reiterated "there was no psychiatric condition that was causally related to the covered injury." CP at 236. Dr. Snodgrass perceived other factors weighing in, but these were unrelated to the injury. Dr. Snodgrass reviewed Dr. Arenas's psychological evaluation and disagreed with Dr. Arenas's diagnoses. Finally, Dr. Snodgrass assumed that Mr. Orozco's psychiatric conditions were the same in October 2011 as they were when he last examined him in 2009, assuming no changes in variables. But Dr. Snodgrass was unable to provide a meaningful opinion as to Mr. Orozco's condition in 2011, and stated that he "[could not] say for sure" and there was "no way of knowing" without actually seeing Mr. Orozco. CP at 251.

Following the hearing, the IAJ issued a proposed decision and order finding that Mr. Orozco's industrial injury did not proximately cause his mental health conditions and

5

that these conditions did not worsen between the two terminal dates. Accordingly, the

IAJ affirmed the Department's order that denied reopening Mr. Orozco's claim. Mr.

Orozco petitioned the Board for review. The Board denied Mr. Orozco's petition and

adopted the IAJ's proposed decision and order.

Mr. Orozco appealed the Board's order to the superior court. The superior court

reviewed the certified Board record, including the experts' depositions, the Board's order,

and the Department's trial memorandum. In its findings of fact, the superior court found

that

> [o]n a more-probable-than-not basis the mental health conditions described
> as: cognitive disorder; anxiety disorder; pain disorder with both
> psychological factors and a general medical condition; depressive disorder;
> and malingering were not proximately caused by the industrial injury and
> did not worsen between July 29, 2009 and October 3, 2011.

CP at 268. Accordingly, the superior court concluded that "[b]etween July 29, 2009 and

October 3, 2011, Jesus Orozco's conditions proximately caused by the industrial injury

did not worsen within the meaning of RCW 51.32.160." CP at 268. The superior court

concluded the Department's order was correct, and affirmed the Board's decision denying

reopening of Mr. Orozco's claim. Mr. Orozco appeals to this court.

6

ANALYSIS

The Industrial Insurance Act (IIA), Title 51 RCW, governs review of workers'

compensation cases. The superior court reviews the Board's order de novo, and its

review is based solely on the evidence and testimony presented to the Board.

RCW 51.52.115. On appeal to the superior court, the Board's decision is prima facie

correct, and a party challenging the decision must support its challenge by a

preponderance of the evidence. RCW 51.52.115.

A.   STANDARD OF REVIEW

This court reviews the superior court's decision, not the Board's order.

RCW 51.52.140. This court reviews the superior court's decision the same way it does

other civil cases. *Id.*; *Mason v. Georgia-Pac. Corp.*, 166 Wn. App. 859, 863, 271 P.3d

381 (2012). This court reviews whether substantial evidence supports the superior court's

factual findings and then reviews de novo whether the superior court's conclusions of law

flow from those findings. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180,

210 P.3d 355 (2009). Substantial evidence exists when the evidence in the record is

sufficient to persuade a rational, fair-minded person that the finding is true. *Cantu v.*

*Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012).

7

In performing this review, this court takes the record in the light most favorable to the party who prevailed in superior court. *Rogers*, 151 Wn. App. at 180. This court does not reweigh or rebalance the competing testimony and inferences, nor does it apply anew the burden of persuasion. *Id.* at 180-81. When the record contains a battle of experts regarding a disputed factual finding, this court defers to the superior court's credibility determinations even if it would have weighed the experts' testimony differently. *Cantu*, 168 Wn. App. at 28.

The parties dispute whether the superior court's finding that Mr. Orozco's mental health conditions were not proximately caused by the industrial injury is a finding of fact subject to substantial evidence review or a conclusion of law subject to de novo review. Proximate cause, at least in this context, is a question of fact—i.e., whether Mr. Orozco's mental health conditions would have occurred but for his 2006 industrial injury.

Proximate cause includes both factual causation and legal causation. *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008). Factual causation, or "but for" causation, asks whether the result would have happened had the event not occurred. *Id.* In contrast, legal causation asks whether, as a matter of logic, common sense, justice, and policy, the connection between the event and the ultimate result is too attenuated to impose liability. *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 204,

15 P.3d 1283 (2001). The fact finder determines factual causation, whereas the court determines legal causation. *Jenkins*, 143 Wn. App. at 254. Here, the superior court's finding that Mr. Orozco's mental health conditions were not proximately caused by the industrial injury refers to factual causation, not legal causation. Thus, this court reviews the Board record to determine whether substantial evidence supports the challenged superior court finding.

B. LACK OF PROXIMATE CAUSE

RCW 51.32.160(1)(a) allows a closed workers' compensation claim to be reopened for aggravation or worsening of a condition proximately caused by an industrial injury. *Eastwood v. Dep't of Labor & Indus.*, 152 Wn. App. 652, 657, 219 P.3d 711 (2009). To succeed in an aggravation claim, a worker must establish the following four elements: (1) the condition was worse after the original injury, (2) the worsening was caused by the original injury, (3) the condition worsened between the terminal dates, and (4) the worsening warranted more treatment or disability beyond what the Department had provided. *Cooper v. Dep't of Labor & Indus.*, 188 Wn. App. 641, 648, 352 P.3d 189 (2015). Because lack of proximate cause is dispositive, we confine our analysis to this, the second element.

Mr. Orozco argues that Dr. Arenas testified that his injury caused his mental health conditions. In so arguing, Mr. Orozco fails to address the crucial issue, which is whether the superior court's findings are supported by substantial evidence. Instead, he argues that there is substantial evidence in the record to support *his* desired finding. This argument fails because this court does not reweigh or rebalance the competing testimony and inferences, but rather determines whether substantial evidence supports the superior court's findings.

Here, substantial evidence supports the superior court's finding that Mr. Orozco's injury did not proximately cause his mental health conditions. Dr. Snodgrass testified that there was no major psychiatric diagnosis for Mr. Orozco, that Mr. Orozco "did not have a psychiatric condition that was causally related to the current injury," and that "there was no clear evidence of a cognitive disorder related to a closed-head injury." CP at 223-24. With regard to the 2009 examination, Dr. Snodgrass reiterated that "there was no psychiatric condition that was causally related to the covered injury," and while Mr. Orozco might have other factors weighing in, these were unrelated to the injury. CP at 236.

Mr. Orozco essentially challenges the superior court's determination that Dr. Snodgrass's testimony was more credible and persuasive than Dr. Arenas's. This court

10

No. 33808-8-III
*Orozco v. Dep't of Labor & Indus.*

must defer to the superior court's credibility determinations in a battle of the experts. Because Dr. Snodgrass's testimony was sufficient to persuade a fair-minded, rational person that Mr. Orozco's injury did not cause his mental health conditions, substantial evidence supports the superior court's finding on lack of proximate cause.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

11